SUMMERS, Justice.
The Trial Court and Court of Appeal’ rendered judgment adverse to the claims of' the Department of Highways in this suit-for a declaration of rights relating to its exercise of the police power. The matter is before this Court on writs granted to-review the judgment of the Court of Appeal, Second Circuit.
The Department of Highways is constructing a limited access Federal-aid highway under the authority of LSA-R.S. 48 :-• 301-306 in cooperation with the United! States Government. The highway in question, a new road, will traverse the northern'* part of Louisiana, through the City of.’ Shreveport, and has been designated as Interstate 20. In crossing the City of Shreve *569 port the new highway will occupy the space •formerly occupied by a number of city streets and alleys.
The defendant, Southwestern Electric Power Company, has a franchise granted to it by the City for the erection of poles and lines and other equipment in the public streets, alleys and parks for transmission, and delivery of its electrical power to its customers.
The Department of Highways, purporting to exercise the police power of the State, has called upon Southwestern to remove and/or relocate at its own expense its poles, lines and other equipment where the highway will cross and replace existing streets and alleys. Upon its refusal the Department sought an injunction to prevent interference with its project and an order to compel removal of Southwestern’s facilities from the right-of-way of the highway. The defendant, Shreveport Transit Company, Inc., intervened in that proceeding. The transit company is a public utility corporation engaged in the operation of a system of trolley and gasoline busses for the transportation of passengers over regularly scheduled routes in the City, pursuant to a franchise from the City. The highway project will require the. relocation and adjustment of a large number' of overhead trolley lines, feeder lines and other facilities used in the operation of its franchise.
The City of Shreveport has refused to require the utility companies to accommodate the highway construction taking the position that the matter is one to be resolved between the Department and the utilities, feeling, too, it is inferred, that it cannot impair the obligations created in the utility franchises. The utility companies have established that the removal required by the Department’s project will involve substantial costs. They contend that the action of the Department constitutes expropriation— a taking of their property without their consent for which compensation is due.
By agreement between the Department and the utilities the work is progressing and the issue is simply whether the privately owned utility companies can be compelled to remove their facilities without being compensated for the substantial costs involved.
Under authority of Acts of Congress, ninety per cent of the cost of relocating these facilities would be borne by the Federal Government unless this payment violates state law or a contract between the parties.[1] There is no claim of any legal *571 ■contract between the utilities and the State which would be violated by such reimbursement; nor has reference been made to any law of Louisiana which would be violated by the State reimbursing these utilities, unless we infer from the position taken by the Department of Highways that, inasmuch as that agency is empowered to compel compliance with its demands without reimbursing the utilities for the expense involved in the relocation and removal of its facilities, ■to nevertheless reimburse them would violate the law of the State. If the position of the Department is untenable, that agency can nevertheless proceed by way of expropriation under laws of this State granting that authority, and under which authority compensation by the Department to the utilities is expressly required.[2] Reimbursement to the State would then be clearly authorized by the congressional authority embodied in Section 123, supra. (Footnote 1)
The determination of the questions at issue is not dependent upon those aspects of this case which have to do with reimbursement between the State and Federal Government, nor is that factor an influence upon the judgment in this cause for these questions must be resolved under applicable state law. It is mentioned, however, because the decision here will necessarily bear upon reimbursement once the legal questions presented by this litigation are settled with finality by this Court. Likewise, it is not determinative of the issues here that the Department has voluntarily agreed to reimburse the City for the costs involved in the removal of city facilities similarly situated, however difficult it may be to find a valid reason for the difference in attitude of the Department toward utilities operated by a city for profit and those operated by private utility companies.
Whether the utility companies are entitled to compensation from the Department requires the determination of these questions under laws of our State: (1) Do the franchises granted the utilities by the City of Shreveport constitute “property”? (2) If so, can the Highway Department take this property from the utilities by administrative order, without paying compensation therefor, by exercising the inherent police power of the State?
The ordinance authorizing the franchise which Southwestern now holds constituted a grant of “the right to lay pipes and erect *573 poles through any of the streets, alleys, avenues, and sidewalks of the City of Shreveport, for the purpose of distributing * * *■' electricity of said company and for said purpose to maintain posts, conductors, lamps and burners”. The ordinance creating the franchise of Shreveport Transit Company, Inc. Likewise was a grant “for the purpose, of maintaining and operating trackless trolley coaches and motor busses, with all necessary and incidental appurtenances, on certain streets and public places” within the City.
These franchises are privileges bestowed by the City on the respective utilities for a consideration and the- exercise of these privileges necessarily involved the use of the property of the City in the manner designated by the authority creating those privileges. The' privileges, uncommon rights thus bestowed, together with the right to the use of city property which is indispensable to those privileges, constitute a valuable property right of the utilities [3] which under fundamental guarantees cannot be taken or damaged except for public purposes and after just and adequate compensation is paid. This right once created and accepted cannot be altered, hindered or otherwise impaired without the consent of the utilities.[4]
The Department’s right to take the property of the utilities by way of expropriation being unquestioned, their right to resort to the police power and thereby avoid the consequences of proceeding by way of expropriation, which involves the payment of compensation, is the only remaining issue.
Police power, like the power of eminent domain, is . an element of sovereignty. Though lacking a precise definition, it has been referred to in this State as follows:
“ * * * [it] may be said to be the right of a State, or of State functionary, to prescribe regulations for the good order, peace, protection, comfort and convenience of the community, which do not encroach on the like power vested in Congress by the Federal Constitution. Of that power, it may well be said, that it is known when and where it begins; but not when and where it terminates. It is a power, in *575 the exercise of which a man’s property; may he taken from him, where his liberty may be shackled, and his person exposed to destruction, in cases of great public emergencies.” New Orleans Gas-Light Co. v. Hart, 40 La.Ann. 474, 4 So. 215. See also Fernandez v. Alford, 203 La. 111, 13 So.2d 483.
The police power, unlike the power of eminent domain, is used to regulate; the power of eminent domain being used to acquire property from private ownership.[5]
The rule concerning the taking of private property for public use has been stated thus:
“ * * * it is universally conceded that when land or other property is actually taken from the owner and put to use by the public authorities, the constitutional obligation to make just compensation arises, however much the use to which the property is put may enhance the public health, morals or safety. No one would seriously contend that private land or buildings or other property might be taken for a hospital, or for a prison, or for the abolition of a dangerous grade crossing without as complete a liability for compensation arising as if the land were to be used for a street or for a city hall.
“Not only is an actual physical appropriation, under an attempted exercise of the police power, in practical effect an exercise of the power of eminent domain, but if regulative legislation is so unreasonable or arbitrary as virtually to deprive a person of the complete use and enjoyment of his property, it comes within the purview of the law of eminent domain. Such legislation is an invalid exercise of the police power since it is clearly unreasonable and arbitrary. It is invalid as an exercise of the power of eminent domain since no provision is made for compensation.” (Italics ours) 1 Nichols, Eminent domain, Sec. 1.42(1) (3rd ed. 1950). See, also, 29 C.J.S. Eminent Domain § 6.
In summary, we find that the exercise of the power of eminent domain contemplates that property, servitudes and rights in property are taken from the owner or damaged by divesting him of one of the essential elements of ownership in order that that element of ownership may be transferred to the public for its use, enjoyment and benefit. The exercise of the police power, on the other hand, contemplates that the owner is regulated in the unrestricted use of his property, or his property is destroyed or taken because the owner’s use or enjoyment is of such a character that the public welfare is thereby injured.
*577 When the Department contends that it possesses the right to exercise the police power it seeks to invoke under the facts of this case, it does not recognize that the repository of the police power of the sovereign state is its Legislature, and that body may confer that power as it deems proper subject to the limitation that the exercise of that power be within reasonable bounds. La.Const. Art. XIX, Sec. 18; Board of Public Utilities In and For City of New Orleans v. New Orleans Railway & Light Co., 145 La. 308, 82 So. 280. It follows that if the power is not delegated it is withheld.
It cannot be said that the Legislature has vested the police power in every agency, commission and subdivision which it has created. The mere fact that an agency, commission or subdivision of the State exists by reason of legislative authority does not result in the conclusion that the Legislature has seen fit to vest police power in that body. Rather, resort should be had to the language of the legislation which creates and empowers the agency, commission or subdivision to determine just what powers are vested in those bodies.
The Department designates constitutional and legislative enactments which it contends confer upon it the authority to exercise the police power under the facts of this case. It points first to the Constitution of Louisiana, Article VI, Sec. 19 and 19.1 as establishing some of its general powers and responsibilities. Section 19 provides that the Legislature shall authorize the “acquisition by expropriation or otherwise, of rights of way for highways and drains therefor; may provide for the purchase or expropriation of property” needed for the purpose of building highways. Section 19.1 provides for the taking of property for highway purposes by ex parte order upon payment of compensation. Another Section 19.1 * provides the organization of the Board of Highways. Nothing in these constitutional provisions would permit the inference to be drawn that the exercise of the police power is authorized for the taking or damaging of private property to be converted to the public use as a highway. By authorizing the Legislature to permit the taking of property for highway purposes by “expropriation or otherwise” (otherwise being understood to mean conventional acquisitions, such as, purchase, donation, exchange, lease, etc.) it should be readily understood that those are the only means available and it should not be implied that other means for the acquisition of property are authorized, especially the exercise of the police power.
Among other, the legislation upon which the Department relies to invoke the police power to acquire or damage the property rights involved in this case is LSA-R.S. *579 32:2 (A), which it contends specifically empowers the Department to “investigate the public highways and effect methods and practices relative thereto, as in its judgment and experience it deems advisable, and enforce them as an exercise of the police power.” In quoting the foregoing relative to police power, there is omitted from that quotation the remaining language of that section which unmistakably clarifies its meaning. Fully quoted the section reads: “The department shall supervise and regulate all traffic on the public highways of this state; enforce the provisions of this Chapter; promulgate rules and regzilations not inconsistent rfrith this Chapter and the general law relative to public highways and their construction, .maintenance and use; investigate the public highzvays and effect methods and practices relative thereto1 as in its judgment and experience it deems advisable; and enforce them as an exercise' of the police pozsaer of the state." (Italics ours). “Enforce, them as an exercise of the police power” refers to methods and practices dealing with traffic regulations— nothing else. • The very chapter to which reference is made in the quoted section is denominated “Traffic Regulations”. To rely upon this authority to invoke the police power of the State for an entirely different purpose—the taking or damaging of private property for a highway right-of-way— is to seek, by way of judicial decree that which can only be bestowed by constitutional or legislative authority. To the contrary, the careful limitation of the use of the police power in the quoted section denies the contention that that power has been bestowed for other purposes. And it is well to observe, too, that the police power there conferred is consonant with the proper concept of its exercise which is to “regulate”, for by that authority it may be invoked to “regulate” traffic. Nothing is said in that legislation of the use of police power to acquire property.
■ Other legislation relied upon by the Department is found in Sections 26,21,193(A), (B), 347(A), (C), 381(A), (B) of Title 48 of the Revised Statutes. Nowhere do we find therein authorization to the Department either expressed or implied which would enable that agency of the State to invoke the police power of the State for the purposes of this case which is to damage or to destroy valuable property rights to serve the public use and benefit, and not to regulate private property because the manner of its use is inimicable to public welfare. Rather, a contrary manifestation of legislative intent is apparent, for we find the Legislature has specifically denominated the manner of acquiring property by the Department in LSA-R.S. 48:217 to be “by expropriation, by donation, by purchase, by exchange, or by lease” and, with specific reference to controlled access facilities such as are here involved, the Department’s au *581 thority is defined in LSA-R.S. 48:303 as follows:
“ * * * the highway authorities may acquire private or public property and property rights for controlled access facilities * * * by donation, purchase, exchange, lease, or expropriation in the same manner as they are now or hereafter may be authorized by law to acquire property or property rights * *
and in LSA-R.S. 48:442 it is to be noted that provision is made for the ex parte expropriation of property but clearly requiring the payment of compensation. These specified methods and this enumerated authority belies the contention that any other method or authority is to be implied.
The conclusion .is evident that if the Legislature had intended that the Department should have the authority to appropriate property by the exercise of the police power that authority would undoubtedly have been spelled out along with those methods it did in fact authorize.
One other matter merits consideration here and it involves the Department’s firm reliance upon the case of New Orleans Gaslight Company v. Drainage Commission, 111 La. 838, 35 So. 929, approved by the Supreme Court of the United States, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831. The basis for the decision in that case is different from that involved here. The New Orleans Gaslight Company' wa§. created by legislative act in 1835 and consolidated with City Gaslight Company by legislative act in 1875. As stated by the Court in that case:
“At the period of the passage of these acts and the creation of' the corporations, the constitutional provision that private property shall not be damaged for public purposes without just compensation were not in force. The rights and obligations of the parties were given and accepted under the provisions of the laws and constitution as then existing.”
This observation by the Court, in the Gaslight Company case involves a decision based upon contracts where the rights and responsibilities of the parties situated similar to the utilities in the case at bar had been confected with the knowledge that the Constitution of our State did not provide that private property shall not be damaged for public purposes without just and adequate compensation. The State’s fundamental law is now different and a different basic concept controls decrees relating to the taking or damaging of private property. This concept is expressed in the constitutional mandate embodied in Article I, Section 2 that “ * • * * private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” Another distinction between the Gaslight Company case and the case at bar is that in- the -Gaslight Company *583 case an agency of the State was not requiring the removal as in the case at bar, but there the State itself was involved in the exercise of a right it had reserved the right to exercise in the charter to the Gaslight Company. It is significant that in the Gas-tight Company case the utility remained in the street and was required only to adjust its lines to accommodate another utility. In the present case the utility is required to completely remove and relocate its facilities away from the streets in which they were formerly installed.
Even though the Department were permitted by the Acts of the Legislature to exercise the police power for the purposes involved in this case, we nevertheless feel that such an exercise of that power under these circumstances would be unreasonable for reasons akin to those assigned by the Court in In re Gillen Place, Borough of Brooklyn, etc., 304 N.Y. 215, 106 N.E.2d 897, which are expressed as follows:
“The rules as to location, referred to in such cases as New York City Tunnel Authority v. Consolidated Edison Co. of New York, supra, [295 N.Y. 467, 68 N.E.2d 445] has been applied in the past only to situations when there was truly regulation, rather than a taking by condemnation. In each such case the utility was required to relocate, but its rights in the particular street remained in being, the relocation therein being merely to accommodate some street improvement. When a street is closed, however, all rights therein are extinguished; ‘when regulation becomes destruction, it ceases to be regulation’. Eighth Ave. Coach Corp. v. City of New York, supra, 286 N.Y. [84] at page 94, 35 N.E.2d [907] at page 912.” See, also, Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680, which recognizes the rule that the exercise of the police power must be reasonable.
The identical situation applies in the case at bar. The Department of Highways is destroying—not regulating—the poles and wires of the utilities. For example, how can an electrical company relocate a line running along a city street when the street is destroyed and replaced by a complicated cloverleaf interchange pattern? The practical effect of this is that the utility has to tear down, at its own expense, the lines built along the city street and rebuild them elsewhere, at its own expense, in a place, manner and design satisfactory to the Department. For all practical purposes this constitutes a destruction or damaging of the utility’s property; for in order to be relocated and redesigned the facilities must in fact be destroyed and rebuilt and thereby as relocated assume a character wholly foreign to that which they possessed prior to the removal.
*585 We hold, therefore, that the utilities are entitled to compensation for the removal costs involved in this case under the expropriation law of the State. Judgment affirmed.
McCALEB and HAMLIN, JJ., dissent with written reasons.

. 23 U.S.C.A. § 123(a) provides: “123. Relocation of utility facilities, (a) When a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof .within urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project. Federal funds shall not *571 be used to reimburse the State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State. Such reimbursement shall be made only after evidence satisfactory to the Secretary shall have been presented to him substantiating the fact that the State has paid such cost from its own funds with respect to Federal-aid highway projects for which Federal funds are obligated subsequent to April 16,. 1958, for work, including relocation of utility facilities.”

. LSA-R.S. 48:218; LSA-R.S. 48:441 et seq.; LSA-R.S. 19:1 et seq., etc. .

. State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665; Shreveport Traction Company v. City of Shreveport, 122 La. 1, 47 So. 40; East Louisiana Railroad Company v. City of New Orleans, 46 La.Ann. 526, 15 So. 157; City of New Orleans v. Great Southern Telephone and Telegraph Co., 40 La.Ann. 41, 3 So. 533; Arkansas Louisiana Gas Company v. Louisiana Department of Highways, La.App., 104 So.2d 204; 37 C.J.S. Franchises §§ 2, 8; City of Seattle v. Columbia, & P. S. R. Co., 6 Wash. 379, 33 P. 1048; Arkansas State Highway Commission v. Arkansas Power and Light Company, 231 Ark. 307, 330 S.W. 2d 77.

. La.Const. Arts. I, Sec. 2, and IV, Sec. 15, L.S.A.

. 18 La.Law Rev. 509.

 Renumbered 19.2.