168 So.2d 389 (1964)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Levi A. JOHNSON et ux., Defendants-Appellees.
No. 1278.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
*390 D. Ross Banister, Glenn S. Darsey, Ben C. Norgress, William W. Irwin, Jr., by William W. Irwin, Jr., Baton Rouge, for plaintiff-appellant.
Fusilier, Pucheu & Soileau, by J. W. Pucheu, Ville Platte, for defendant-appellee.
Frugé & Foret, by Jack C. Frugé, Ville Platte, for intervenor.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
The State of Louisiana, through the Department of Highways, filed suit under the provisions of LSA-R.S. 48:441-460 to expropriate for highway purposes a strip of land off the east side of defendants' property, which is located on U. S. Highway 167, in the village of Turkey Creek in Evangeline Parish. Plaintiff deposited $113.00 in the Registry of the court as its estimate of just and adequate compensation for the property expropriated, and the order of expropriation was signed on October 24, 1963.
The defendants filed responsive pleadings alleging that the amount deposited was inadequate, and seeking to obtain an increase in the award for the value of the land taken, as well as for severance damages. Defendants alleged that due to the lack of depth of the property between the highway and a railroad right-of-way behind the property, the taking would put the defendants out of business, would render portions of the property useless, and would greatly diminish the value of the remainder of the property. It is alleged that buildings in which a service station and garage business were being operated, and the home defendants occupied, were rendered useless by the proximity of the highway. Defendants claimed severance damages for the removal and reconstruction of these buildings, for the cost of a chain link fence, and the diminution of the value of the remaining property.
A petition of intervention was filed by Tate Oil Products, a partnership, seeking damages for the cost of removing and relocating certain tanks, pumps, and other petroleum jobbing equipment owned by the intervenor and in use at the Esso service station operated by the defendants. Intervenor alleges that because of the expropriation of the property of defendants, the defendants will be unable to operate the Esso service station, and intervenor's equipment would have to be removed to another location.
The district court awarded the defendant landowners a total of $1,500.00 for the value of the land taken, subject to a credit of $113.00 for the amount already deposited, and the sum of $16,164.00 as severance damages. The intervenor was awarded $1,000.00 as compensation for the cost of removing its equipment from the property of defendants.
The plaintiff has appealed to this Court seeking a reduction of the awards to the amount originally deposited in the Registry of the court. Neither the defendants nor intervenor filed any appeal or answer to the appeal.
The issues involved in this appeal are the value of the property expropriated, and the amount, if any, of severance damages which should be awarded.
Plaintiff contends that the district court erred in disregarding the testimony of its expert witnesses in favor of the testimony of the expert witnesses of defendants. It is urged that the testimony of the defendants' experts should be disregarded since it was based on a single special purpose sale, and their values were fixed on a lot basis rather than a commercial acreage basis. It is maintained that the district court erred in fixing the value of the residence after the taking at only its salvage value of $600.00 and in finding that the *391 commercial buildings and the chain link fence on the property had no value after the taking, because of their proximity to the highway, even though these improvements were not within the area expropriated and were not physically damaged. Plaintiff objects to the prejudice of its case in being ordered by the district court to turn over the written appraisal report of its expert witness to defendants' counsel during the trial of the case on the merits. Plaintiff maintains that the award to the intervenor should be rejected in that removal costs incurred because of an expropriation proceedings are not compensable items. Plaintiff urges that the value of the property taken should be fixed in accordance with the testimony of its experts at $113.00, and that defendants and intervenor have not carried the burden of proof as to any severance damages.
Defendants and intervenor maintain that the judgment of the district court should be maintained. It is urged that the evidence shows the property is no longer suitable for any type business and that the residence has been rendered useless. It is submitted that the testimony of their expert witnesses was properly accepted as being more credible than the highly paid experts for the plaintiff who were not familiar with the property in the area, and who fixed values which were considered far out of line by the district court. It is further maintained that the testimony of plaintiff's experts should be disregarded since the comparables they used were completely discredited. It is submitted that in the absence of true comparables, as in a case such as this where the property is situated in a unique location, the knowledge and experience of the appraisers must be used to determine the values, and that the defendants' appraisers, who were residents, realtors and appraisers of the parish and were familiar with the property and the people in Turkey Creek, were better qualified than the plaintiff's experts.
The record shows that the defendants' property was expropriated for the Turkey Creek-Bayou Cocodrie Highway, and is located on U. S. Highway 167 in the northwest corner of its intersection with Pine Street in the village of Turkey Creek. This intersection is located approximately 200 feet north of the "T" intersection formed where U. S. Highway 167 turns from the east to the north, joining Louisiana Highway 13. Defendants' land extends north-south along the west side of U. S. Highway 167 a distance of approximately 475 feet, lying between that highway and a railroad right-of-way. Before the taking the northern boundary measured approximately 104 feet, and the southern boundary along Pine Street measured approximately 53 feet. The strip taken for highway purposes was of a varying width, ranging from 24.89 feet on the south boundary, to a few feet at a point 152 feet from Pine Street, then widening again to approximately 12 feet on the north boundary. The size of defendants' property before expropriation was 0.787 acre; the property expropriated constituted approximately .087 acre, leaving approximately 0.700 acre. Located on the property, but not within the area taken, was defendants' garage, residence, a chain link fence, a building consisting of a tin garage building on a concrete slab joining a brick service station building, and also a grease rack, air-compressor and a sign on a pole. Within the area taken were two gasoline pumps and an island, and underground gas tanks. The grease rack, air-compressor, sign on a pole, gasoline pumps and island, and underground gas tanks were owned by the intervenor, who was a jobber for Esso petroleum products.
The west line of the property taken passes between the service station building and the gasoline pumps approximately eight feet from the building, close to the chain link fence along the highway, and approximately 17 feet from the residence of defendants. The proposed hard surface portion of the highway is to be located approximately 8 feet from this west line of the property taken. The hard surface portion of the highway was to be widened *392 eleven feet on this side, bringing it this much closer to the buildings of defendants.
There is considerable conflict in the evidence as to the value of the property taken and as to the extent, if any, of severance damages. Plaintiff called on its behalf two experts, Messrs. Everett T. Stephens and M. C. Gehr.
Mr. Stephens, a real estate broker in Alexandria, Louisiana, since 1950, and Mr. Gehr, also a realtor in Alexandria since 1925 and a member of the American Institute of Real Estate Appraisers, testified that the value of the land expropriated was $113.00, in accordance with the estimate of just compensation they signed for the expropriation proceedings. They testified they used the market data approach, that they searched the records for comparable sales in the area, located 50 to 60 sales in the vicinity, discarded approximately one-half of these as family sales, leaving about 24, and then used four of these as comparables best suited to determine the value of the property taken. After inspecting the property, they found its highest and best use to be for commercial purposes. Mr. Stephens found the land of defendants without improvements to be valued at $1,250.00 per acre at the time of the taking, and Mr. Gehr valued it at $1,300.00 per acre. They then set the value of the part taken, 0.087 acre, at $113.00. They concluded that there was no severance damages occasioned by the taking.
The defendants and the intervenor also called two experts to testify as to the value of the land and severance damages, namely, Mr. Gilbert H. Vidrine, a licensed realtor in Ville Platte since 1947, who had been engaged primarily in the abstracting business since 1937; and Mr. Hasker Garland, also from Ville Platte, whose main business was the retail lumber business, but who also did financing and made appraisals for a savings and loan association and bank in Ville Platte. They testified they were familiar with the property in the area of Turkey Creek, having done business in the area and lived in the parish for years. They testified they worked together in making their appraisal, with Mr. Vidrine being more familiar with the land and Mr. Garland having more knowledge with reference to the value of the buildings. At the conclusion of their examination of the property, each concurred with each other as to the values. Relying on their general knowledge of the values in the area, and using one comparable sale, they valued the defendants' land on a lot basis before the taking at $9,500.00. They set the value of the 0.087 of an acre taken at $1,500.00.
With reference to severance damages, they were of the opinion that because of the close proximity of the highway, the commercial buildings and residence were rendered useless at their location after the taking. They testified that the buildings could not be economically moved because of their construction inasmuch as the cost of removal would equal any salvage value, and the house could not be moved back because of the width of the lot; and, therefore, it would have a salvage value of only $600.00 after the taking.
They fixed the severance damages occasioned by the taking at $1,500.00 to the remaining land; $8,064.00 for the complete loss of value of the commercial buildings; $6,528.00 ($7,128.00 less $600.00 salvage value) for loss to the residence; and, $72.00 for the relocation of a chain link fence. These figures total $16,164.00, and formed the basis of the judgment of the district court.
The defendants and intervenor presented the testimony of Mr. L. P. Demourelle and Mr. Rene Tate, who were qualified as experts in the business of gasoline service stations. Mr. Tate was a member of the intervenor partnership. They testified that they were jobbers for petroleum products, and they had supplied a number of service stations throughout Evangeline Parish for years. They were competitors, with Mr. Demourelle handling D-X products, *393 and Mr. Tate's firm handling Esso products. They testified that the expropriation of defendants' land rendered the remainder useless for the operation of a service station. They estimated that the cost of removal of the tanks and equipment owned by the intervenor would amount to $1,000.00 or more.
Our first consideration will be as to the value of the land expropriated.
The record shows that this property in question is located in a very good location for the operation of a service station and garage in the Turkey Creek area. The defendants operated this business at this location as their livelihood since 1946, and had sold an average number of gallons of gas per month as good as any other station in that community. Although defendants' home was located on the northern part of the property, the highest and best use was shown to be commercial.
It is noted that there is a wide spread between the values fixed by the experts. Plaintiff's experts fixed the value in acreage at $1,300.00 per acre, which would place the total value of defendants' property before the taking at $1,023.10 ($1,300.00 per acre times 0.0787 of an acre). The defendants' experts fixed the value before taking at $9,500.00. This is a ratio of over 1 to 9.
The only comparable used by the defendants' experts was a sale in 1960 by K. W. Saddler to the Four States Telephone Company for $500.00 for a lot measuring 40 feet by 60 feet to be used for a telephone building. The record shows this was a special purpose sale. On the basis of this sale, and their general knowledge of property values in the area, the defendants' experts reached their evaluation of the property before the taking by dividing the property into lots with a width of 50 feet each. They considered this property sold to the Telephone Company was not on the main highway and was not in a special location as was defendants' property, that there had been a slight increase in property values from 1960 to the date of the expropriation, and that with the additional depth of the subject property, these 50 feet lots should be valued at $1,000.00 each, rather than $500.00. Comparing the square footage in such lots as compared with the area taken, it was figured that the property taken amounted to a lot and a half, and was valued at $1,500.00.
The plaintiff's experts were well qualified, but were not familiar with the value of the land in the Turkey Creek area. Of the four comparables used by each of the plaintiff's experts, three were the same. Parcel #19, a sale to Eugene Hunley of 260 feet along U. S. Highway 167 within 200 yards of the subject property was shown not to reflect a true sales price. Both Mr. Hunley and his wife testified at the trial that they purchased their land at below market value from a good friend who wanted them to live next door as a neighbor. Parcels #10 and #11, being sales by K. W. Saddler to James C. Cloud and to the village of Turkey Creek, were also discredited. James C. Cloud was Saddler's brother-in-law, and Saddler testified he agreed with his wife to sell parcel #10 to her brother at a special price. Saddler also testified he sold Parcel #11 at a special price to the village of Turkey Creek for the purpose of helping the village on a promise that a recreation center would be built on it. Mr. Stephens used Parcel #12, a sale by Roy D. Clark to Charlie C. Acor. Although Mr. Gehr had this comparable, he chose not to use it in view of the low sales price, but instead used Parcel #4 which was located about 7 miles from the subject property and south of Bayou Chicot. Plaintiff's experts then adjusted the prices of the comparables upward or downward depending on whether they considered each comparable more or less valuable than defendants' property, and arrived at a value per acre of $1,300.00 for the defendants' property. This figure was closest to comparable #11, which, after adjustments for the various factors such as location, size, etc., indicated a value of defendants' land at $1,328.00 per acre. Mr. Gehr stated he leaned heavily on this comparable. Using *394 $1,300.00 per acre as the value of defendants' land, the parcel take of 0.087 acre was valued at $113.00.
After carefully considering the record, this Court finds it cannot accept the conclusions of either the plaintiff's experts or the defendants' experts. On the face of the record, we agree with the finding of the district court that the valuation of defendants' property by plaintiff's experts at close to $1,000.00 (for 0.787 of an acre) is too low. On the other hand, we cannot uphold the high evaluation of $9,500.00 placed upon the property by defendants' experts.
We believe the plaintiff's experts fell into error in trying to value this particular piece of property on an acreage basis. Because of its unusual size and shape, and its excellent location for the operation of a service station, it should have been valued as a commercial lot, with less emphasis placed on its acreage. However, we do not agree with the procedure of defendants' experts in dividing this land into numerous smaller lots at a valuation of $1,000.00 each.
The best method for valuing this particular property is on a front footage basis. Using this method, the comparable used by defendants' experts would be $12.50 per front foot. However, this was a special purpose sale of a small lot, and the price is comparably too high. The comparable closest to the evaluation set by plaintiff's experts was Parcel #11. This parcel fronted 173 feet on U. S. Highway 167 by a depth of 150 feet. At a selling price of $1,000.00, this amounted to a price of approximately $6.00 per front foot. Mr. Saddler, the seller, testified that he considered this sale below market value. Although this property is deeper than defendants' property, it does not have the peculiar location close to the intersection of two highways, and therefore, this comparable would indicate that the value of the defendants' land should be fixed at more than $6.00 per front foot. We consider that Parcels #4 and #12 were too dissimilar for consideration, and that Parcels #19 and #10 were completely discredited.
Considering the evidence in the record, defendants' property should have been valued before the taking as a commercial lot with an average value of $10.00 per front foot, amounting to $4,750.00. We then compute the value of the area taken of 0.087 acre to be $500.00.
Proceeding to the issue of severance damages, we agree with the finding of the district court that there were certainly severance damages occasioned by the taking. The taking has accentuated a negative factor of the property, which is its eastwest width, and the corner portion near Pine Street is rendered nearly useless. Excluding the portion taken, the remaining property had an average value of approximately.$9.00 per front foot or $4,250.00. We find that for 150 feet from Pine Street, the remaining property is damaged by 50%, or $4.50 per front foot. This computes to $1,000.00 severance damages to the defendants' land. Our procedures for fixing these damages followed the theory of the defendants' experts, but used the valuation by the footage at $10.00 per front foot, rather than by the lot as a basis which computes to $20.00 per front foot. Accordingly, the values we have fixed amount to approximately one-half of those fixed by the defendants' experts.
Proceeding to the improvements on the property, we find their value because of the taking has been diminished. Because of the close proximity to the highway, the value of the commercial buildings for the purpose of operating a service station has been badly damaged, and it will no longer be feasible to try to operate a service station with the buildings at their present location. The evidence predominates that it would be impractical to move the pumps to the side of the service station where they would be hidden from traffic approaching from one direction. There are several complicating factors in this regard. These buildings cannot be moved because of their *395 construction. It is true that these buildings have been rendered useless for the purpose of operating a service station. Even though they are situated within approximately 8 feet of the highway right-of-way, we cannot agree that the buildings have been rendered completely useless for all commercial purposes. Although possibly the major use for the service station is no longer possible, and there are now less purposes for which it is suited, nevertheless, it certainly has some value at its present location after the taking. The defendants operate a repair business in the garage building, and although this building is also rendered somewhat less convenient for such an operation, the building is still suitable for such a business. Because of the proximity of the right-of-way, there will be parking problems, and land to the south of the service station building may have to be used for parking. Also, the brick portion formerly operated as a service station can be used for some commercial purposes, although some adaptation of the building may be necessary, and parking and other facilities must be provided for at the side of the building. Under the circumstances of this case, we find that the market value of these commercial buildings have been diminished by 75%. The evidence does not show a serious dispute as to the valuation of the building. The lower court followed the evaluation placed by defendants' experts, based on $6.00 a square foot for the brick area of the building operated as a service station, and $4.00 per square foot for the area behind the brick building and the garage building, totaling $8,064.00. This valuation was mainly substantiated by one of plaintiff's experts, Mr. Gehr, with the exception that he considered the area valued at $4.00 per square foot as a slightly high evaluation. Accordingly, we fix the severance damages to the commercial buildings occasioned by the taking at 75% of $8,064.00, or $6,048.00.
As to the residence of defendants, we do not agree with the lower court's ruling that its use at its present location after the taking has been rendered worthless, and that its present value is only salvage value of $600.00. This house is also not within the area taken and was not physically damaged. Although its market value has, without question, been diminished, the house still has value at its present location. The plaintiff has called to our attention a case very similar to the instant case, namely, State of Louisiana, through the Department of Highways v. Bourg, (La.App., 1 Cir., 1961), 135 So.2d 600. In that case Mr. Bourg's house was located within 8 feet of the right-of-way and within 27 feet of the edge of the concrete after the taking; whereas in the instant case, the front steps of the residence are approximately 17 feet from the right-of-way and approximately 25 feet from the edge of the concrete highway. In the Bourg case, the court awarded the defendant a sum equaling 10% diminution in value of the house. We are of the opinion that the defendants in the instant case are entitled to severance damages to the residence of 10% of its valuation, $7,128.00, or the sum of $713.00.
A chain link fence fronting the property and enclosing the residence was not included in the valuation of the residence or property. The record shows that 72 feet of this fence needs to be moved at a cost of $1.00 per foot, and the market value of the property and residence has been further reduced because of the expropriation by the sum of $72.00.
In summary, we find that the award to defendants should be adjusted to the sum of $8,333.00, itemized as follows, to-wit:

Value of property taken ............................ $ 500.00
Severance damages to land (including fence only).... $1,072.00
Severance damages to commercial buildings .......... $6,048.00
Severance damages to residence ..................... $ 713.00
 _________
Total .............................................. $8,333.00

*396 The next matter for consideration is whether or not the defendants should have been allowed to examine the written report of plaintiff's expert, Mr. Gehr, during cross-examination at the trial of this case. Plaintiff urges that the order of the court allowing the examination thereof over plaintiff's objection violated the second paragraph of Article 1452 of the LSA-Code of Civil Procedure, since this report was a writing reflecting the mental impressions, conclusions, opinions or theories of an expert. We agree that this objection should have been sustained. Although Mr. Gehr and the plaintiff were placed at some disadvantage, however, in view of the testimony thereafter elicited from Mr. Gehr, and considering this case as a whole, we do not find that there has been any substantial prejudice to the rights of plaintiff.
Now turning to the intervenor's claim, the plaintiff contends that the cost of removing the intervenor's property is not compensable.
Counsel for intervenor concedes that the property belonging to it in the instant suit consists of movable property, namely, gasoline storage tanks, pumps, etc. This Court is of the opinion that the trial judge was in error in allowing intervenor the costs of removing the above movable items.
It has been held by our appellate courts that mere consequential damages arising from discomfort, disturbance, injury to business, cost of removing property from the condemned premises and the like are damnum absque injuria. Department of Highways v. Southwestern Electric Power Company, 243 La. 564, 145 So.2d 312; State Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35; Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40; and, State Through Dept. of Highways v. Henderson (La.App., 3 Cir., 1962), 138 So.2d 597.
Counsel for intervenor has not cited any cases to the contrary.
For the reasons assigned the judgment of the district court is amended so as to reduce the amount awarded to defendants from $17,664.00 to $8,333.00, and by rejecting the claim of intervenor, Tate Oil Products, and, as amended, the judgment is affirmed. Plaintiff to pay all costs of this appeal.
Amended and affirmed.