**BEAIRD–POULAN, INC., Plaintiff-Appellant,**

v.

**DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA, Claude S. Brinegar, and Secretary of Transportation, Defendants-Appellees.**

No. 73–3453.

United States Court of Appeals, Fifth Circuit.

July 5, 1974.

Rehearing Denied Aug. 21, 1974.

Thomas J. Wyatt, Cecil E. Ramey, Jr., Shreveport, La., for plaintiff-appellant.

Donald E. Walter, U. S. Atty., Robert H. Shemwell, Asst. U. S. Atty., Shreveport, La., William W. Irwin, Jr., D. Ross Banister, Jessee S. Moore, Jr., Baton Rouge, La., Wallace H. Johnson, Dept. of Jus., Edmund B. Clark, George R. Hyde, John J. Zimmerman, Attys., Washington, D. C., for defendants-appellees.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge:

Section 221 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Relocation Act), 84 Stat. 1894, 42 U.S.C., § 4601 note, provides:

"(a) Except as provided in subsections (b) and (c) of this section, this Act and the amendments made by this Act shall take effect on the date of its enactment.

"(b) Until July 1, 1972, sections 210 and 305 shall be applicable to a State only to the extent that such State is able under its laws to comply with such sections. After July 1, 1972, such sections shall be completely applicable to all States. .

"(c) The repeals made by paragraphs (4), (5), (6), (8), (9), (10), (11) and (12) of section 220(a) of this title and section 306 of title III shall not apply to any State so long as sections 210 and 305 are not applicable in such State."

This statute became generally effective on January 2, 1971. States which, because of their laws, could not comply as of that date were given until July 1, 1972 to come into compliance. The legislative history shows that the latter provision [42 U.S.C., § 4601(b)] was, in fact, made for the benefit of the State of Louisiana because Congress believed [although erroneously, as will be seen later] that the laws of Louisiana rendered that State unable, at the time, to comply, see Conference Report, No. 91–1780, U.S.News, 91st Cong., 2d Sess., pp. 5465, 5466 (1970).[1]

The Relocation Act specifically stated its purpose:

"The purpose of this title is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole." (Relocation Act, § 201).

Article IV, § 12 of the Louisiana Constitution of 1921, at times pertinent to this litigation, provided as follows:

"The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private; nor shall the State, nor any political corporation, purchase or subscribe to the capital stock or stock of any corporation or association whatever, or for any private enterprise. Nor shall the State, nor any political corporation thereof, assume the liabilities of any political, municipal, parochial, private or other corporation or association whatsoever, except as otherwise provided in this Constitution; nor shall the State undertake to carry on the business of any such corporation or association, or become a part owner therein; provided, the State, through the Legislature, shall have power to grant the necessary rights of way through its public lands for the construction of any railroad, or flood control or navigation canal; and provided, police juries and municipal corporations may, in providing for destitute persons, utilize any charitable institutions within their corporate limits for the care, maintenance and asylum of such persons; and all appropriations made to such institutions for the purpose aforesaid, shall be accounted for by them in the manner required of officials entrusted with public funds. . . ."

This, in general, states the legal background for the litigation, here under review.

---

[1]. By March 12, 1972, Louisiana had amended its Constitution and statutes in a manner intended to remove all doubt of its ability to comply with the Relocation Act. Thus, in this case, we deal with an apparently non-recurrent type of lawsuit.

In April and May, 1971, in connection with the construction of an interstate highway at Shreveport, Louisiana, Beaird-Poulan, Inc., the plaintiff-appellant, in response to expropriation (condemnation) proceedings brought by Louisiana, was required to move machines, equipment, office supplies, and other items from its manufacturing plant and offices to a new location. The cost of the move is alleged to have been $217,082.46. The Louisiana Department of Highways refused to pay said expenses or to process any administrative claim therefor in compliance with the Relocation Act. The Secretary of the United States Department of Transportation declined to amend grants, contracts, and agreements with the Louisiana Department of Highways to include the cost of relocation expenses.

Beaird-Poulan filed suit against the Department of Highways for the recovery of its cost and for injunctive relief requiring the Secretary of Transportation to enforce the Relocation Act as to it and others similarly situated.

The Department of Highways answered that the complaint failed to state a claim upon which relief might be granted and further answered that because of the constitutional prohibition appearing in Article IV, § 12, it could not comply with the Act.

The United States, on behalf of the Secretary of Transportation, moved to dismiss for lack of jurisdiction and because the complaint failed to state a claim upon which relief could be granted.

The District Court dismissed the complaint.

This was done in reliance upon the provisions of the Louisiana constitutional provision and the decision of the Louisiana Supreme Court in Department of Highways v. Southwestern Electric Power Company, 243 La. 564, 145 So.2d 312 (1962). It was further pointed out that Louisiana, under the law then existing, was not *required* (emphasis ours) to pay

compensation for relocation costs incurred in expropriation cases, citing Gray v. Department of Highways, 250 La. 1045, 202 So.2d 24 (1967); Louisiana Highway Commission v. DeBouchel, 174 La. 968, 142 So. 142 (1932); Rapides Parish School v. Nassif, 232 La. 218, 94 So.2d 40 (1957); Department of Highways v. Levy, 242 La. 259, 136 So. 2d 35 (1962), and Housing Authority of Shreveport v. Green, 200 La. 463, 8 So. 2d 295 (1942).

The District Court concluded that any payment of relocation costs by the State of Louisiana would constitute a gratuity and that such a donation was prohibited by its Constitution, Article IV, § 12. Further, since the Louisiana law prevented the Department of Highways from complying with the Relocation Act, the Secretary of Transportation should likewise be dismissed.

It is beyond doubt that in the existing state of the law Louisiana was not *required* to pay relocation costs. As we view the issue, however, this did not necessarily mean that, in the words of the federal relocation statute, it was *unable* to do so.

We do not read Department of Highways v. Southwestern Electric Power Company, *supra,* as shedding any precedential light on this litigation. In that case, the Power Company refused to move its lines and poles from city streets which were to be converted into the interstate highway system unless it was paid for the cost of the relocation. The Louisiana Supreme Court denied removal expense relief on the ground that removal was required by the franchises which had granted the use of the streets in the first place, for, indeed, under Louisiana law a corporation may not acquire any proprietary interest in a street.

This case was decided in 1962, eight years before the enactment of the federal relocation act. The Federal Highway Act of 1956, as then written, did authorize the payment of relocation costs to

public utilities. Of this, the Louisiana Supreme Court said:

"Finally, counsel, citing the Federal Highway Act of 1956 (23 U.S.C. Sec. 123), assert that, since Congress recognized therein that relocation of utility facilities was a necessary part of highway construction in the interstate highway system and specifically authorized the use of Federal funds to reimburse states for the Government's proportion of the amounts paid to the utilities for costs of relocation of their facilities, it has evidenced its intent that such relocation costs are unprecedented and should not be required to be borne by the utilities. From this predicate, it is argued that it is improper to hold that the costs of removal should not be paid by plaintiff forasmuch as the law of Louisiana does not prohibit reimbursement and since a proportionate part (90% in this instance) of all monies plaintiff would be required to pay could be recovered from the Federal Government.

"We find no substance in this contention. Liability of plaintiff for the costs of removal of the utilities' facilities from the public way is not to be determined on its right under the Federal statute to obtain reimbursement of a large proportion of the costs from the United States. On the contrary, such liability is to be resolved by the laws of this State. The fact that our law may not prohibit reimbursement ᐧ of the utilities has nothing to do with the plaintiffs' *liability* for reimbursement. We hold that no such liability legally exists."

Article IV, § 12 of the Louisiana Constitution was not mentioned in the opinion of the Court. It dealt, very clearly, with an *authorization* that federal funds might be contributed toward the relocation costs of public utilities. It did not deal, as here, with a specific congressional command that such relocation costs *should be paid*, the only exception being the provision that a state should not be required to comply prior to July

1, 1972 if its laws rendered it unable to do so.

Left, as we are, with no definitive decision of the Louisiana Supreme Court on the pertinent aspects of Article IV, § 12, we must construe it according to its own terms. We see nothing in it to prohibit the expenditure of public funds for a lawfully authorized state purpose. Such could in no wise be considered a loan, a pledge, a grant, or a mere donation.

In another context, the Louisiana Supreme Court has so held. See Caldwell Brothers v. Board of Supervisors, 176 La. 825, 147 So. 5 (1933), wherein it was stated:

"*The purpose of this article was not to hamper state agencies or boards in the exercise of their proper functions, or in the conduct of their legitimate affairs, but to put an end to the practice of the Legislatures to pledge the credit of the state to aid private enterprises.* Benedict v. City of New Orleans, 115 La. 645, 39 So. 792." 147 So. at p. 7. (Emphasis added).

This reduces us to the ultimate question: Did the laws of Louisiana in April and May, 1971, render the State [the Department of Highways] unable to spend highway funds for relocation costs necessitated by the interstate highway system? We think not.

On the authority of Short & Murrell v. Department of Highways, 233 La. 735, 98 So.2d 170 (1957), involving payment for the construction of a Highway Department Headquarters building, we have no doubt that the State Department of Highways had the authority to contract with the United States for the construction of interstate highways, including all matters necessary, appropriate, or incidental thereto.

Particularly pertinent to this decision were Sections 48:22 and 48:26 of the Louisiana Revised Statutes, which read as follows:

"§ 22. Powers

The department has all of the rights, powers, and immunities inci-

dent to corporations. It may acquire, own, administer, alienate, and otherwise dispose of all kinds of property, movable and immovable, tangible and intangible; contract; adopt, alter, or destroy an official seal; sue and be sued, implead, and be impleaded."

"§ 26. Incidental powers

Except as otherwise expressly provided by this Chapter, the department may perform every act necessary, convenient, or incidental to the exercise of its power and authority, the discharge of its duties, or the performance of its functions."

Even more appropriate to the issue now under consideration is Section 48:212 of the Louisiana Revised Statutes:

"§ 212. Agreements with federal government

A. The department may enter into any agreements with the federal government or with any federal agency for the purpose of building or improving public highways and flight strips, to the extent that the federal government or its agency is authorized by federal statutes to enter into such agreements, and with the same limitations."

From all this we conclude that while the State of Louisiana, acting by its Department of Highways, was not required by its own law to pay relocation costs it was, nevertheless, clearly able under those laws to comply with the Relocation Act of 1970. The cited statutes authorized such a course and Article IV, § 12 of the Louisiana Constitution does not prohibit it.

The defenses raised by the Secretary of Transportation originate in the argument that Louisiana could not lawfully comply with the Act. Assuredly, he was, and is, willing to comply. Our decision moots the issues raised by him and thus we do not decide them.

The judgment of the District Court is reversed and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.