**BEAIRD–POULAN, INC.,**
v.
**DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA**
and
John A. Volpe, Secretary of the Department of Transportation.
**Civ. A. No. 17678.**

United States District Court,
W. D. Louisiana,
Shreveport Division.
Aug. 13, 1973.

Cecil E. Ramey, Jr., Thomas J. Wyatt, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., for plaintiff.

William W. Irwin, Jr., Asst. Gen. Counsel, Baton Rouge, La., for defendant Dept. of Highways.

Donald E. Walter, U. S. Atty., Robert H. Shemwell, Asst. U. S. Atty., Shreveport, La., for John A. Volpe.

DAWKINS, Senior District Judge.

RULING ON PENDING MOTIONS

This action is brought pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 et seq., effective January 2, 1971.

Plaintiff, Beaird-Poulan, Inc., is a Delaware corporation authorized to do and doing business in the State of Louisiana, located in Shreveport. It is, and was at all times in question here, operating a large plant engaged in manufacturing power chain saws, and marketed on a world-wide basis. The defendants are (1) the Department of Highways, State of Louisiana, a political corporate body which has the power to sue and be sued under Louisiana law, LSA–R.S. §§ 48:13 and 48:22; and (2) John A. Volpe, Secretary of the Department of Transportation of the United States.

Plaintiff alleges it is a "displaced person," as that term is defined in the Act, and in the rules and regulations promulgated pursuant to it. It was forced to relocate certain buildings, machinery, etc., formerly attached to and forming part of real property it owned and upon which it conducted its business, as the result of a large part of land it owned having been expropriated for interstate highway purposes by the Louisiana Department of Highways. As stated, Beaird-Poulan, because of this, and since it already had firm plans for expanding its plant upon the land taken, moved its business from the Greenwood Road in Shreveport, Louisiana, several miles away, to the Flournoy-Lucas Road, also in Shreveport, during the months of April and May, 1971.

The property taken was acquired by legal action in the State Court, for a federally-assisted Project, designated as No. I–220–I(73) 12, commonly known as Interstate By-Pass Highway 220. Plaintiff contends that its actual and reasonable expenses incurred in moving its buildings, machinery, etc., to the new location were $217,082.46, and that the Department of Highways has refused to pay such expenses or to process any administrative claim made by plaintiff for them.

Plaintiff further asserts that the Transportation Secretary has failed and refused to amend the grants, contracts, and agreements with the Louisiana Department of Highways to include the costs of actual relocation expenses, as required under Sections 210 and 211(c) of the Act; and, on the contrary, the Secretary has approved grants, contracts, and agreements with his co-defendant, without receiving assurances that fair and reasonable relocation payments would be paid to it. Plaintiff further contends this was done with full knowledge that the Department of Highways would not provide displaced persons, such as Beaird-Poulan, with fair and reasonable relocation payments.

After the Louisiana Department of Highways filed its answer to plaintiff's complaint, the latter filed a motion to strike certain allegedly insufficient defenses under Rule 12(f), F.R.Civ.P. Subsequently, the United States moved to dismiss plaintiff's complaint against the Secretary on the grounds that plaintiff failed to allege appropriate jurisdiction and that this Court has no jurisdiction over it in this action. Moreover, the Government urges that plaintiff's complaint fails to state a claim upon which relief can be granted.

Specifically, plaintiff seeks now to strike the Fourth, Fifth, Sixth, and Seventh defenses raised by the Department of Highways' pleadings as being insufficient in law. Basically, all four of these defenses hinge upon an interpretation of the federal statute and also upon an Article of the Louisiana Constitution. The principal point made by this defendant is that the Relocation Act, as passed by Congress, but which was in effect after January 2, 1971, and at the time plaintiff's property was taken, contains the following provision, at Section 221:

"(a) Except as provided in subsections (b) and (c) of this section, this Act and amendments made by this Act shall take effect on the date of its enactment. [January 2, 1971.]

"(b) Until July 1, 1972, sections 210 and 305 shall be applicable to a State only to the extent that such State is able under its laws to comply with such sections. After July 1, 1972, such sections shall be completely applicable to all States."

It is conceded by all parties that this provision was enacted solely at the behest of the State of Louisiana.

The question then is whether the Department of Highways was prohibited *vel non*, by the laws of Louisiana, from complying with the federal statute at the time plaintiff was forced to move. Louisiana requested this provision for exemption because it felt that under its Constitution it would not be able to comply with the federal Act. Thus, it would be deprived of federal funds for the con-

struction of interstate highways and other federally funded road projects.

The pertinent provision of the Louisiana Constitution is Article 4, Section 12:

"The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private. . . . ."

Plaintiff's counsel in his brief informs us that, after diligent search, the only Louisiana decisions he can find even remotely related to this situation is Department of Highways v. Southwestern Electric Power Co. (SWEPCO), 243 La. 564, 145 So.2d 312 (1962), and the same case, the pertinent language of which is found in the Court of Appeal's decision rendered in 1961, 127 So.2d 309, at 319. In other words, this earlier decision is the only case plaintiff finds to support its position and it can find none which, at the time in question, are opposed to its interpretation of Article 4, § 12. It is argued that the appropriate language in the Court of Appeal's decision construes the Louisiana constitutional provision as not prohibiting the Department of Highways from granting reimbursement for relocation expenses inasmuch as the only language in the jurisprudence of the State on that point has declared that such costs are compensable elements of damage when expropriation of real property occurs. Therefore, we must determine whether this Appeal Court decision supports plaintiff's position. If it does not, then we must determine whether there has been a definitive interpretation of this section of Article 4 by the Louisiana Supreme Court.

Unquestionably, at the time involved, when plaintiff's land forcibly was taken by the State, Louisiana's jurisprudential law did not allow damages for costs of moving or relocation when private property was expropriated. The rationale stated by the Louisiana Supreme Court for such denial was that expenses of re-location were *damnum absque injuria*. *Southwestern Electric, supra,* 145 So.2d, at page 321, McCaleb, J., dissenting from the original decision, citing Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40.

*Southwestern Electric, supra,* involved the question of whether or not public utility companies had the right to be reimbursed for the expense of moving their equipment and facilities, in order to accommodate construction of Interstate Highway 20. The utility company there had been granted a franchise by Shreveport upon streets owned by it, and the Highway Department required removal of the equipment (poles and electric lines) in order to construct the Interstate Highway. It is clear from a reading of the federal law in existence at that time (1962) that it did not require any relocation payments, but permitted the reimbursement of 90%. for any relocation payments actually made by a state.

The Louisiana Supreme Court in its original ruling held that the State must reimburse the utility company for such removal. Its reasoning was as follows: the franchise granted by Shreveport to SWEPCO was a "property right," and under the Constitution of Louisiana any expropriation of such right required compensation. Since the Highway Department expropriated parts of SWEPCO's property rights, that utility would have to be reimbursed. The case also involved the question as to whether the Highway Department had been vested with the police power of the State by its Legislature; and in the original opinion, the Court decided that it had not. Justice McCaleb dissented vigorously with written reasons. On rehearing, his views were adopted, he then acting as the organ of the Court.

There, the primary question, as stated by Justice McCaleb, was whether or not the utility's franchise right to use the streets of Shreveport for relocating its lines and poles was a property right of such a nature that it was not subject to a reasonable exercise of the State's po-

lice power to require removal or adjustment of the power lines and equipment without reimbursement of the cost expended for the forced change of location. The Court held that there had not been a taking or damaging of the contractual rights acquired by the utility under its franchise agreement. As noted, on rehearing, the Supreme Court reversed its original ruling and that of the Court of Appeal, which had granted the right to compensation for relocation costs.

As also noted, plaintiff invites our attention to the earlier Court of Appeal decision in the same case, State v. Southwestern Electric Power Co., 127 So.2d 309 (1961), and contends that, when read in *pari materia* with the Supreme Court's decision, this earlier decision supports its contention that Article 4, § 12, of the Louisiana Constitution did not prohibit the Department of Highways from paying relocation expenses. It cites the following language from the Court of Appeal's decision:

"We observe the contention in brief of counsel for plaintiff [the Louisiana Highway Department] that the State is prohibited from paying defendant's costs under Article 4, Section 12, of the Constitution. This unqualified statement is not supported by further argument and our examination of Section 12, which prohibits the use of the credit of the State for the benefit of ' * * * any person or persons, associations or corporations, public or private; * * * *'; completely fails to establish any basis for the conclusion urged. Plaintiff's actions in the matter destroy this argument, for if it would be a violation to use the funds available for the benefit of a private corporation, it is equally illegal to use such funds for the benefit of a public corporation—the City of Shreveport. We reject this argument as being without merit."

On rehearing, the Louisiana Supreme Court, as noted, made the following statement regarding the Court of Appeal's statement attempted to be used by SWEPCO's counsel on review:

"Another argument of counsel is that plaintiff is discriminating against the utilities because it agreed to reimburse the City of Shreveport for the removal of water mains and other equipment which the City had placed on the streets.

"Suffice it to say that this is not a legal argument. Whatever plaintiff agreed to do with regard to the City of Shreveport is no concern of the defendant utilities and could not be employed by them as a ground for evading their obligation to remove their facilities from the public way."

The Court finally concluded:

" . . . [I]t is argued that it is improper to hold that the costs of removal should not be paid by plaintiff for as much as the law of Louisiana does not prohibit reimbursement and since a proportionate part (90% in this instance) of all monies plaintiff would be required to pay would be recovered from the Federal Government.

"We find no substance in this contention. Liability of the plaintiff for the costs of removal of the utilities' facilities from the public way is not to be determined on its right under the Federal statute to obtain reimbursements of a large proportion of the costs from the United States. On the contrary, such liability is to be resolved by the laws of this State. *The fact that our law may not prohibit reimbursement of the utilities has nothing to do with the plaintiff's liability for reimbursement. We hold that no such liability legally exists.*"

We conclude, therefore, that the Supreme Court of Louisiana, by using the words "may not" in the above-quoted provision, did not address itself to whether Article 4, § 12, of the Constitution of Louisiana prohibited the State, through the Department of Highways, from paying relocation expenses. Thus, this leaves the statement of the Second Circuit Court of Appeal as the only extant interpretation of Section 12 of Article 4. As stated, and quoted above, the

Supreme Court basically rejected the Court of Appeal's statement pertaining to the use of funds by the Department for the benefit of Shreveport, and not of the utility. Because of the complete reversal of the Court of Appeal decision, plaintiff's interpretation of an attempted distinction between the two decisions is without merit.

Section 32 of the Federal Aid Highway Act of 1968 (PL 90–495; 82 Stat. 815) stated that:

"Nothing contained in chapter 5 of title 23, United States Code, shall be construed as creating in any condemnation proceedings brought under the power of eminent domain, any element of damages not in existence on the date of enactment of such chapter 5."

Title 23 U.S.C., ch. 5, § 502 et seq., then was the applicable Highway Relocation Assistance statute. It was repealed and now is Chapter 61, U.S.C., Title 42, §§ 4601–4638. It readily is apparent that the payments authorized in Chapter 5 of Title 23 U.S.C. are in excess of or in addition to those required to provide just compensation when a condemnation action is brought. They are not payments which the Federal Government itself would owe as damages or as just compensation if it were condemning or otherwise acquiring property for a highway, nor are these required payments which a state must bear when it expropriates property. These payments are gratuities made from the benevolence of Congress in its handling of the Federal Highway Fund.

■ Acquisition of property for highway rights-of-way by the Department of Highways of Louisiana is made under the laws of that State, and not under federal law. See Department of Highways v. Southwestern Electric Power Company, *supra*. That Department is required to pay compensation only as defined by Louisiana's law and jurisprudence. See Gray v. Department of Highways, 250 La. 1045, 202 So.2d 24 (1967); Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142 (1932).

■ Under Louisiana jurisprudence, moving or relocation costs have been held to be non-compensable as they are *damnum absque injuria*. Rapides Parish School Board v. Nassif, *supra*. Cost of moving and relocating a business and the cost of moving any personal property are subject to the same rules. Loss of business from relocation and closure of a business occurring contemporaneously with condemnation of the property connected with that upon which the business was located also has been held to be non-compensable. Department of Highways v. Levy, 242 La. 259, 136 So. 2d 35 (1962); Housing Authority of Shreveport v. Green, 200 La. 463, 8 So. 2d 295 (1942).

If such payments were made (before addition of § 18 to Article 4 of the Louisiana Constitution), other than those items of damage which were compensable prior to March 1, 1972 (when that amendment became effective), they were gratuities, as was the case of relocation assistance payments proposed in the Federal Highway Acts of 1968 and 1970. They were not obligations of the State or its agencies; they were merely charitable donations.

■ The State and its agencies can pay only its legal obligations; it is not permitted to donate, pledge, or grant its money, property, rights, and credits to or for any person or persons, associations or corporations, public or private. Article 4, Section 12, Constitution of Louisiana, 1921, as amended; James v. Rapides Parish Police Jury, La.App., 113 So.2d 88 (1959).

The legislative history of Public Law 91–605, referring to the exemptions cited previously, reads:

"Louisiana is the only state affected by this provision. That state must amend its constitution in order to comply with chapter 5." U.S.Code Congressional & Administrative News, pp. 5392–5485, at page 5466, Vol. 3, 91st Cong. 2d Sess., 1970.

It is plain, therefore, that it was the congressional intent to exempt Louisiana from applications of this federal statute because of the provisions contained in Louisiana's Constitution. Congress did recognize the inability of Louisiana to comply with the congressional enactment and that it was necessary that the State pass a constitutional amendment before assurance could be made fully to comply with the congressional Acts. Louisiana amended its Constitution by adding Section 18 to Article 4, which became effective, as noted, March 12, 1972.

■ Plaintiff suggests that Louisiana approached the problem in this manner in order that it would not have to pay 10¢ on every dollar for relocation payments. We are sure that Louisiana believed its Constitution prohibited such grants to individuals and corporations and would not have gone to the expense of going before Congress, getting this exemption, and incurring the expenses of passing the constitutional amendment (Art. 4, § 18), which had to be submitted to the people for popular vote, in order to save 10¢ on every dollar of relocation expense. Thus, plaintiff's motion to strike the allegedly insufficient defenses must be denied.

Plaintiff concedes that if we should decide that, at the time involved, the Louisiana law prevented the Department of Highways from complying with the relocation Act, then we should dismiss the suit as to both Volpe and the Department of Highways. Accordingly, we grant Volpe's motion to dismiss for failure to state a claim.

We note that under Rule 12(f) of the Federal Rules of Civil Procedure no provision is made for converting the motion to strike insufficient defenses into a motion for summary judgment by the Department of Highways, as is the situation under Rules 12(b)(6) and 12(c). Therefore, that Department should submit a motion for summary judgment, under Rule 56, with supporting affidavits, for our consideration if there is no dispute as to material facts.