Dear Mr. Speed:
This is in response to your request for an opinion of this office as general counsel to the St. Helena Parish School Board.
You ask whether the St. Helena Parish School Board can donate or sell a tract of land of two (2) to five (5) acres next to the St. Helena Parish Elementary School for construction of a new building for the Head Start Program operated within the parish by Regina Coeli Child Development Carter, Inc., a non-profit private corporation formed to administer the federally funded "Head Start Program".
You advise that while such a transfer seems compatible with the educational goals of the parish, you are unable to find any legal authority for a donation of the property to the private entity, and any sale appears to require a finding that the subject property is no longer needed for the public purposes of the school board and involves a public bid process.
In researching this question, we have reviewed the provisions of LSA-R.S. 17:87.6, LSA-R.S. 41:891, et seq., as well as LSA-R.S.33:1321, et seq., the Local Services Law.
Under LSA-R.S. 17:87.6, the school board would be required to make a finding that the subject property is not used and, in the judgment of the school board, is not needed in the operation of any school or schools within its jurisdiction prior to a sale, lease or other disposition.
Under LSA-R.S. 41:891 et seq., the school board would likewise be required to make a finding or determination that the subject lands are no longer needed for school purposes and that the best interest of the public school system would be served by the sale of such lands, pursuant to public auction or under sealed bids in accordance with the procedures established by law.
The provisions of LSA-R.S. 33:1321 et seq., the Local Services Law, pertain to relationships between governmental entities such as parishes, municipalities or other political subdivisions of the state, but do not pertain to private corporations, either profit or non-profit. Thus, these provisions would be inapplicable to the present situation.
Therefore, the only statutes which we have found which are applicable to this situation are those referred to above, which you have already reviewed, being LSA-R.S. 17:87.6 and LSA-R.S.41:891, requiring sale at public auction or under sealed bids.
As briefly discussed in my letter of July 20, 1993, Article VII, Section 14(A) of the Louisiana Constitution of 1974 provides that "***funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
Several cases decided by the state and federal courts have interpreted these provisions, holding that a public entity may not utilize or transfer funds, credit, property or things of value to even another public entity if there is no legal obligation to do so. See, for instance, Town of Brusly v. West Baton Rouge Police Jury, 283 So.2d 288 (1st Cir., 1971), writ denied, 284 So.2d 776 (Sup.Ct. 1973), wherein the Police Jury attempted to reallocate monies from its surplus funds to municipalities within the parish, which was held unconstitutional on the basis that the Police Jury had no legal obligation to provide funding to municipalities; Beard-Pouland, Inc. v. Louisiana Department of Highways, 362 F. Supp. 547 (W.D. La. 1973), wherein it was held that the state could not constitutionally pay relocation expenses when the jurisprudence did not permit such and when a constitutional amendment authorizing this action had not gone into effect; and City of Port Allen, Louisiana v. Louisiana Mun. Risk Management Agency, Inc., 439 So.2d 399 (Sup.Ct. 1983), wherein the Supreme Court held as unconstitutional a statute providing that all government subdivisions which are members of an intergovernmental risk management agency are jointly liable for claims not paid by the agency on the basis that one municipality could not constitutionally agree to pay claims of another inasmuch as it would amount to a donation or a gratuity not authorized by law.
It is notable that in the latter case, the legislature had expressly attempted to impose solidary liability on all members of the fund for unpaid claims, and this was just as explicitly held by the Supreme Court to violate the provisions of Article VII, Section 14(A) of the Constitution. The opinions of this office have consistently followed the holdings of these cases, as in Op. Atty. Gen. 78-1260 (October 4, 1978); Op. Atty. Gen. No. 87-587 (September 8, 1987); Op. Atty. Gen. No. 89-180 (April 26, 1989); Op. Atty. Gen. No. 90-392 (January 15, 1991); Op. Atty. Gen. No. 90-73 (April 24, 1990).
Consequently, under the present circumstances, we recommend that consideration be given to such other alternatives as may be available to facilitate construction of a new Head Start building.
One such alternative would be for the private entity to select and utilize other land for its building site.
Another alternative would be to use the provisions of Section14(C) of Article VII of the Louisiana Constitution, being an exception to the general rule of Section 14(A), to engage in a cooperative endeavor with the private corporation. In a properly constructed cooperative endeavor, the land could be utilized as a site for the Head State building, with the property and improvements reverting back to the school board upon termination of the Head Start Program.
If you would like to pursue this alternative, please let me know and I will provide whatever assistance you may need in drafting a Cooperative Endeavor Agreement which we feel would meet the requirements of the Constitution.
Please let me know if we may be of further assistance in this matter.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: GARY L. KEYSER, CHIEF Lands and Natural Resources Section
GLK/scp