Dear Mr. Kemp:
This is in response to your letter of June 2, 1995, transmitting the request of attorney Robert W. Tillery on behalf of the Tangipahoa Water District for an opinion of this office on several different matters. The questions will be addressed verbatim in the order presented, as follows:
(1) Can the Tangipahoa Parish School Boarddonate[1]
 (2) If such a lease is possible, does R.S. 41:981 apply since there is no industrial development board involved?
 (3) Further, does R.S. 41:716 apply since there is no attempt to sell the property to the Tangipahoa Water District.
It should be noted that questions number (1) and (2) are in conflict, since the former contemplates a donation of property, being a transfer and alienation from the Tangipahoa Parish School Board to the Tangipahoa Water District, while question number (2) contemplates a simple lease arrangement. Our opinion as to question number (1) is that the Tangipahoa Parish School Board may not donate Sixteenth Section property because it lacks legal authority to do so for two basic reasons which will be explained below.
The first reason that the School Board may not alienate Sixteenth Section property is that section 16 in every township within the State has been reserved by Congress for public schools purposes.[2]
The landmark case of State of Louisiana v. William T. JoyceCompany[3]
The second reason the School Board may not donate, sell or transfer School Board property to another political entity is that the Constitution generally prohibits such a transfer.
Under the provisions of Article VII, § 14(A) of the Louisiana Constitution, except as otherwise provided therein, "the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." Exceptions to this general rule are found in Section 14(B), with respect to the use of public funds for programs of social welfare for the aid and support of the needy; for pension and insurance programs; for public employees; and for the pledge of public funds, credit or property with respect to bonded debt. Section 14(C) also authorizes the State, its political subdivisions and political corporations to engage in cooperative endeavors for a public purpose.
The Louisiana Supreme Court has interpreted the provisions of Article VII, § 14(A) to mean that a violation occurs whenever the State or a political subdivision seek to give up something of value when under no legal obligation to do so. In Town ofBrusly v. West Baton Rouge Parish Police Jury, 283 So.2d 288
(1st Cir. 1971), writ denied, 284 So.2d 776 (Sup.Ct. 1973), wherein the Police Jury attempted to reallocate monies from its surplus funds to municipalities within the parish, it was held unconstitutional on the basis that the Police Jury had no legal obligation to provide funding to such municipalities. See alsoBeard-Pouland, Inc. v. Louisiana Department of Highways,362 F. Supp. 547 (W.D. La. 1973), wherein it was held that the state could not constitutionally pay relocation expenses when the jurisprudence did not permit such and when a constitutional amendment authorizing this action had not gone into effect; andCity of Port Allen, Louisiana v. Louisiana Mun. RiskManagement Agency, Inc., 439 So.2d 399 (Sup.Ct. 1983), wherein the Supreme Court held as unconstitutional a statute providing that all government subdivisions which are members of an intergovernmental risk management agency are jointly liable for claims not paid by the agency on the basis that one municipality could not constitutionally agree to pay claims of another inasmuch as it would amount to a donation or a gratuity not authorized by law.
It is notable that in the latter case, the legislature had expressly attempted to impose solidary liability on all members of the fund for unpaid claims, and this was just as explicitly held by the Supreme Court to violate the provisions of Article VII, Section 14(A) of the Constitution. The opinions of this office have consistently followed the holdings of these cases, as in Op. Atty. Gen. No. 78-1260 (October 4, 1978); Op. Atty. Gen. No. 87-587 (September 8, 1987); Op. Atty. Gen. No. 89-180 (April 26, 1989); Op. Atty. Gen. No. 90-392 (January 15, 1991); Op. Atty. Gen. No. 90-73 (April 24, 1990); Op. Atty. Gen. No. 93-681 (November 1, 1993); Op. Atty. Gen. No. 93-717 (November 22, 1993).
However, the School Board might want to consider the possibility of entering into a cooperative endeavor pursuant to Article VII, § 14(C) of the Constitution, authorizing cooperative endeavors for a public purpose. In a number of previous opinions, the Attorney General has construed these provisions to authorize a true cooperative endeavor between governmental entities where the relationship is motivated by a public purpose, yields a public benefit, and the value of the benefit realized is commensurate with the value of the public property utilized or transferred. See, for instance, Op. Atty. Gen. 89-66.
With regard to question number (2), the provisions of R.S. 41:981
would not appear to apply since the School Board does not propose to lease to a parish or municipality and there is no corporate industrial development board involved.
With respect to question number (3), R.S. 41:640(C) provides authority for the School Board to lease, contract or both, with respect to a Sixteenth Section. Therefore, unless the School Board is attempting to donate, transfer or otherwise alienate, as contemplated by question number (1) above, R.S. 41:716 would not apply.
In summary, the Tangipahoa Parish School Board may rely upon either Article VII, § 14(C) to engage in a cooperative endeavor agreement or upon R.S. 41:640 in order to lease the subject property for the purpose of drilling a water well and building a storage tank facility and, additionally, to receive a water supply for schools within the parish.
We hope this information is of benefit to you and if we may of further assistance, please call upon us.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK/bb
Honorable Duncan S. Kemp, III District Attorney Twenty-First Judicial District P.O. Drawer 639 Amite, LA 70422-0639
DATE RECEIVED: 6/16/95
DATE RELEASED
GARY L. KEYSER ASST. ATT. GEN.
[1] While styled "donation", the proposed transaction implicates the provisions of Article IX, § 4 of the Constitution insofar as there is an alienation of property owned by the State. The relevant provision reads as follows:
 . . . The mineral rights on property sold by the state shall be reserved, except when the owner or person having the right to redeem buys or redeems property sold or adjudicated to the state for taxes.
 unto the Tangipahoa Water District one acre, more or less, of Sixteenth Section property for the purpose of the said Tangipahoa Water District drilling a water well and building a storage tank facility. The time period for the lease is desired to be 99 years and the Tangipahoa Water District would provide a tie-in for 2 adjacent schools (Ponchatoula High School and Vinyard Elementary) in order for those two schools to receive water from the new facility. The Tangipahoa Parish School Board would pay for water received. (Emphasis ours.)
[2] See Acts of Congress of April 21, 1806, 2 Stat. 391, and March 3, 1811, 2 Stat. 641, reserving section 16 in each township of land in the future State of Louisiana for the support of schools and vesting title in the State of Louisiana on its admission to the Union.
[3] 261 F. 128 (C.C.A., La., 1919), cert. den. 253 U.S. 484,40 S.Ct. 481, 64 L.Ed. 1024. [Historical note: This case was handled by Matthew J. Allen, Dist. Atty. of Amite, La., and William Winans Wall, of New Orleans, La., and Bolivar E. Kemp, of Amite, La., of counsel, for the State of Louisiana.] decreed that the title to such school lands vests in the State on its admission into the Union, to the exclusion of the United States, and that in the exercise of such trust, the State is empowered to dispose of school sections in such manner as it deems best by action of the legislature to carry out the purposes of the dedication. In furtherance of this scheme, the legislature has enacted La. R.S.41:711, dealing with the procedures for the sale of school lands and providing for a public referendum of the inhabitants of the township with reference to whether or not such lands may be sold. However, as discussed above, legal title to such sixteenth sections vests in the state itself and such reserved lands may not be sold without state approval.