Dear Mayor Morial:
You have requested an opinion of the Attorney General regarding the provision of salary increases to employees of the City of New Orleans (City) and the Orleans Parish School Board (Board). In order to fund these increases, it will be necessary for both the City and the Board to identify an additional recurring source of revenue. You state that the City is considering the imposition of a property service charge.
You further state that it is anticipated that the revenues from the service charge will raise sufficient funds so that the City will be in a position to transfer funds to the Board to assist in the provision of pay increases to its employees. You specifically ask whether the transfer of these revenues from the City to the Board may be legally accomplished through a valid cooperative endeavor agreement.
The transfer in question must be examined in light of ArticleVII, Section 14 of the 1974 Louisiana Constitution (Constitution). It provides, in pertinent part, the following:
 § 14. Donation, Loan, or Pledge of Public Credit
 Section 14. (A) Prohibited uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
* * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds, was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge or donation of public funds.
Paragraph (C) of Section 14 authorizes the State and its political subdivisions (i.e., the City and/or the Board) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City ofPort Allen v. Louisiana Risk Management, et al., 439 So.2d 399
(La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 The cases that do exist [under La. Const. Art. IV § 12 (1921)] hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. . . .
* * *
 Section 14(C) does not help the state either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." [Emphasis added.]
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty (i.e., authority) by the transferor to alienate its funds or property. See Beard-Poulan, Inc. v. Dept.of Highways, 362 F. Supp. 547 (W.D. La. 1973) and Town of Bruslyv. West Baton Rouge Parish Police Jury, 283 So.2d 288 (La.App. 1st Cir. 1973). This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the transfer. Second, the expenditure must also be for a public purpose. Finally, the expenditure must create a public benefit proportionate to the cost (i.e., the amount transferred or expended). Attorney General Opinion Nos. 98-378, 97-471-A, 96-115, 95-81, 93-787, 93-164, 92-722, 92-127 and 90-651.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. With this in mind, we turn to your query and the transfer at issue.
The initial issue to be determined regarding the City's transfer of funds to the Board is whether a valid legal duty or obligation exists for said transfer. In this regard, we refer you to the Home Rule Charter of the City of New Orleans, Article IX, Chapter 3, Section 9-314, which provides, in pertinent part, as follows:
Section 9-314. Cooperative Endeavors.
 (1) The City of New Orleans may enter into cooperative endeavors with the state or its political subdivisions or political corporations, with the United States or its agencies, or with any public or private association, corporation, or individual with regard to the procurement and development of immovable property, joint planning and implementation of public works, joint use of facilities, joint research and program implementation activities, joint funding initiatives, and other similar activities in support of public education, community development, housing rehabilitation, economic growth, and other public purposes. [Emphasis added.]
As can be seen from the above, the Charter vests the City with broad and sweeping authority to enter into cooperative endeavor agreements with other political subdivisions to engage in activities in support of public education and community development. We believe that, clearly envisioned within the scope of this authority, is the power to assist in the funding of salary increases for Board employees. We turn now to the second requirement — that the expenditure be fore a public purpose.
A public purpose and benefit are presumed where the underlying legal obligation for the expenditure is created by the constitution, a charter, a statute or an ordinance. Attorney General Opinion No. 92-722.
In light of the provisions of the Charter, quoted supra, we find the City's transfer of funds to the Board for pay increases constitutes a public purpose. The increases will foster the retention and/or attraction of quality personnel to provide quality education to students residing within the City. We turn now to the final criterion — that the transfer of funds create a public benefit to the City proportionate to its cost (i.e., the amount transferred).
Clearly, one cannot put a price on the value of a quality education for the City's youth. The redactors of the City's Charter obviously believed public education to be of fundamental importance as evidenced by the authority contained in Section 9-314, quoted supra. While this benefit is somewhat intangible, it is, nevertheless, substantative, and one of the most important contributions which government can make to the quality of life of its citizens.
We therefore conclude that the financial assistance to be granted by the City to the Board for employee pay increases is not so disproportionate to the public benefit to be realized so as to render it unconstitutional.
The cooperative endeavor agreement, itself, should be structured so as to clearly reflect the mutual obligations and benefits to be performed and received by each party, thereby assuring that the benefits received by the City are commensurate to its financial participation.
Parenthetically, we note Attorney General Opinion No. 95-81, which addressed the issue of the legal authority for the City of Mandeville to donate its public funds to the St. Tammany Parish School Board for use by public school sponsored organizations (e.g., the Mandeville High School Debate Team) or, alternatively, by a public school in any manner it deemed appropriate to enhance the education of its students. Therein, we concluded that such a donation constituted a violation of Article VII, Section 14 of the 1974 Louisiana Constitution. The basis for that conclusion was the absence of any legal authority (i.e., a valid legal duty or obligation) for the City to alienate its funds for this purpose:
 In this regard, this office is unaware of any provision in the City's Code, and/or Charter, the Louisiana Constitution or the Louisiana Revised Statutes which obligate the City to fund or implement the programs and goals of the debate club. [Emphasis added.]
This opinion is clearly distinguishable from the issue presented herein, since the Home Rule Charter of the City of New Orleans unequivocally authorizes the City to enter into cooperative endeavors in support of public education.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla