Dear Chairman Hebert:
On behalf of the Bayou Cane Fire Protection District you have requested an opinion of this office as to whether or not the Terrebonne Parish Communications District was authorized to enter into the February 1, 2003, intergovernmental agreement with the Bayou Cane Fire Protection District to provide direct dispatch for fire service response calls. Specifically, you ask whether such an agreement is authorized in the statutory powers and duties creating the Communications District as set forth in La.R.S. 33:9106(C).
This issue was previously addressed in Attorney General Opinion 96-97A. In that opinion our office concluded that the issue of whether or not the statutory provisions establishing the Communications District authorized an intergovernmental agreement need not be reached in light of the authority granted the Communications District in La.R.S. 33:1321 et seq., the "Local Services Law". Our office opined that the Local Services Law provided the statutory authority for an agreement between the Rapides Parish Communications District and the various municipalities located within the Communications District to provide and monitor non-emergency radio transmissions. The opinion further stated that such an agreement must conform to the statutory provisions cited above and the consideration to be received by the District from the municipality must adequately reimburse the District for the costs incurred in rendering the services. A copy of the Attorney General Opinion No. 96-97A is attached. The following is a summary of the statutes comprising the Local Services Law.
Section 1324 provides, in pertinent part, the following:
 Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in . . . the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and any such agreements may include but are not limited to activities concerning:
"(1) Police, fire and health protection." [Emphasis added.]
Section 1321 provides, in pertinent part:
 For the purposes of this Part `Municipality' shall include cities, towns, villages, or other special districts or other political subdivisions created to perform one or more public functions or services. `Governing body' shall mean the body with authority to enact ordinances and resolutions and in which is vested responsibility for the public policy;
Section 1323 provides for a liberal construction relating to such joint transactions as follows: "This Part shall be construed liberally, to the end that, through the use of arrangements provided herein, greater economy and efficiency in the operation of local services may be encouraged, and the benefits of such services may be extended."
Section 1324.1 authorizes contracts for such services as follows:
 In order to effect economy of operation, any two or more political corporations or subdivisions may contract with each other to combine the use of administrative and operative personnel and equipment upon such basis of compensation therefor as may be mutually agreed to by all such political corporations and subdivisions.
The form and publication of the agreements authorized under the Local Services Law are governed by Section 1325:
 All arrangements concluded under the authority of R.S. 33:1324 shall be reduced to writing. For this purpose it shall suffice for each party to the agreement, acting through its governing body, to accept the agreement by the passage of an ordinance or resolution setting out the terms of the agreement. The agreement, ordinance, or resolution shall be published in the official journal of the parish or municipality, in the same manner as are the other proceedings of the governing body.
The contents of the written agreements are addressed in Section 1331, in pertinent part, as follows: "Agreements concluded under R.S. 33:1324
and all written agreements concluded under R.S. 33:1325 shall include a statement of the financial obligations of each of the parties to the agreement."
The Local Services Law described above grants parishes, municipalities or political subdivisions of the State of Louisiana the authority to contract with each other for the joint use of funds, facilities, personnel or property for police, fire and/or health protection. The terms of any such agreement must be formally reduced to writing, setting forth the reciprocal rights and obligations of each party.
The agreement between the Terrebonne Parish Communications District and the Bayou Cane Fire Protection District to provide direct dispatch for fire service response calls accomplishes the objective of providing fire and health protection and would qualify as an authorized intergovernmental agreement pursuant to R.S. 33:1321 et seq. Furthermore, because the agreement in question was reduced to writing and sets forth the reciprocal rights and obligations of each party, the required formalities have been met.
Because the right of any parish, municipality, or political subdivisions to contract with other such entities is statutorily granted in the Local Services Law, there is no need to address the issue of whether or not LSA R.S. 33:9106(C) includes a separate and independent authority to contract for these services. It is therefore the opinion of this office that the Communications District is a political subdivision of the state and can benefit from the provisions of Local Services Law through the execution of the February 1, 2003, intergovernmental agreement with the Bayou Cane Fire Protection District.
We trust this answers your inquiry.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _____________________________ RICHARD L. MCGIMSEY Assistant Attorney General
RPI:RLM:jnp
Attachment
xc: Mr. Sidney C. Sundbery
Date Released: September 26, 2003
OPINION NUMBER 96-97-A
SEPTEMBER 25, 1996
15-A: Constitutional Law
46-A: Fees Costs
71: Municipalities
90-A: Political Subdivisions
90-A-1: Public Funds Contracts
90-A-2: Public Funds: Loans, Pledges or Grants
Article VII, Section 14 of the 1974 Louisiana Constitution
R.S. 45:791, et seq. R.S. 33:9101, et seq.
R.S. 33:9105(1) R.S. 33:9101-9106
R.S. 33:1321, et seq. R.S. 33:1324 R.S. 33:1325
Affirms Opinion No. 96-97 which holds that the Rapides Parish 911 Emergency Communications District is not authorized to use its surcharge revenues to answer non-emergency telephone calls for other public entities and/or for call-taking and dispatching of non-emergency radio transmissions for other public entities. District may enter into an intergovernmental agreement under R.S. 33:1321, et seq., with Municipality to use its personnel to provide such services if it is adequately reimbursed to cover the costs associated therewith.
Mr. Tom Wells Assistant District Attorney Post Office Drawer 1472 Alexandria Louisiana 71309
Dear Mr. Wells:
You have requested this office to reconsider its Opinion No. 96-97 to Field V. Gremillion, III, Assistant District Attorney for the Ninth Judicial District. This opinion concluded that the Rapides Parish 911 Emergency Communications District ("District") is not authorized to use its surcharge revenues for answering non-emergency calls and/or call-taking and dispatching non-emergency radio transmissions for other public entities located within the District's geographical boundaries.
You first ask whether the District can use unanticipated surplus funds for the call-taking and dispatching of non-emergency radio transmissions for a municipality lying within the District's geographical bounds. You note that the scenario presented to this office upon which Opinion No. 96-97 was based, included factual information that the District lacked the revenues and personnel to perform this function. Thus, you ask whether our opinion would change, given the fact that the District will realize a surplus at the end of its fiscal year. For the following reasons, it is our opinion that it would not.
As noted in Opinion No. 96-97, Article VII, Section 14 of the 1974 Louisiana Constitution generally prohibits the loan, pledge or donation of public funds. While Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the District) to engage in cooperative endeavors for a public purpose, our Courts have determined that Paragraph (C) does not create an exemption or exception from the general constitutional prohibition, but rather merely supplements the prohibition against donations contained in Paragraph (A). City of PortAllen v. Louisiana Risk Management, et al., 439 So.2d 399 (La. 1983) and Attorney General Opinion No. 90-651.
The jurisprudence and prior opinions of this office have recognized a three-fold test for cooperative endeavors to be deemed valid under our Constitution. The expenditure or transfer of public funds or property must be based on a legal obligation or duty by the transferor to alienate said funds or property (i.e., based on a valid statute, ordinance, charter or contract). The expenditure must also be for a public purpose. Finally, the expenditure must create a public benefit proportionate to its cost (i.e., the amount expended). Beard-Poulan, Inc. v. Department ofHighways, 362 F. Supp. 547 (W.D.La. 1973), Town of Brusly v. West BatonRouge Parish Police Jury, 283 So.2d 288 (La.App. 1st Cir. 1973) and Attorney General Opinion Nos. 93-787, 92-222, 92-127 and 90-651.
A review of the laws comprising Local Emergency Telephone Systems found at R.S. 45:791, et seq. and the Communications Districts, themselves, found at R.S. 33:9101, et seq., reveal that the sole purposes for which the District is created are to establish, maintain and operate a 911 emergency telephone service, and to improve the identification of thoroughfares and dwellings. While constitutional and statutory provisions allow the municipality, under its general police power, to receive and dispatch non-emergency radio transmissions between its central office and law enforcement and fire protection officials, they provide no such authority for the District. Consequently, there exists no legal obligation on the part of the District to gratuitously provide the services at issue.
You specifically draw our attention to R.S. 33:9105(1) and ask whether it vests the District with the authority in question. It provides:
 "The emergency telephone system shall be designated to have the capability of utilizing at least one of the following four methods in response to emergency calls:
 (1) `Direct Dispatch Method', that is a telephone service to a centralized dispatch center providing for the dispatch of an appropriate emergency service unit upon receipt of a telephone request for such services and a decision as to the proper action to be taken." [Emphasis added.]
Thus, Section 9105(1) is, by definition, clearly limited to the receipt of emergency telephone requests for the dispatch of appropriate emergency service units.
Further, and as previously discussed in Opinion No. 96-97, the proposition passed by the electorate of Rapides Parish imposing the surcharge to generate the revenues for the operation of the District provides that they be used:
 ". . . for the purpose of establishing, maintaining and operating the 911 emergency telephone system; . . . and that the Board be governed by Chapter 31, Title 33 of the Louisiana Revised Statutes of 1950, as amended, (R.S. 33:9101-9106) and other constitutional or statutory authority as provided by the legislature?" [Emphasis added.]
Based upon the above language, we must reaffirm the opinion expressed in Opinion No. 96-97 that the revenues of the District, surplus or otherwise, may not be used for the purpose of call-taking and/or dispatching non-emergency radio transmissions between law enforcement and fire protection officials and their central offices. Accordingly, the District should discontinue using its revenues for said purposes, immediately.
Finally, you ask whether it would be possible for the District to enter into an intergovernmental agreement under which the District could engage jointly with municipalities to provide the services in question.
In answer to your question I refer you to R.S. 33:1321, et seq., which comprise the laws relating to intergovernmental functions and local services. Section 1324 provides, in pertinent part, the following:
 "Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in . . . the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and any such agreements may include but are not limited to activities concerning:
 (1) Police, fire and health protection." [Emphasis added.]
Section 1321 provides, in pertinent part:
 "For the purposes of this Part `Municipality' shall include cities, towns, villages, or other special districts or other political subdivisions created to perform one or more public functions or services. `Governing body' shall mean the body with authority to enact ordinances and resolutions and in which is vested responsibility for the public policy;"
Section 1323 provides for a liberal construction relating to such joint transactions as follows:
 "This Part shall be construed liberally, to the end that, through the use of arrangements provided herein, greater economy and efficiency in the operation of local services may be encouraged, and the benefits of such services may be extended."
Section 1324.1 authorizes contracts for such services as follows:
 "In order to effect economy of operation, any two or more political corporations or subdivisions may contract with each other to combine the use of administrative and operative personnel and equipment upon such basis of compensation therefor as may be mutually agreed to by all such political corporations and subdivisions"
The form and publication of the agreements authorized under the Local Services Law are governed by Section 1325:
 "All arrangements concluded under the authority of R.S. 33:1324 shall be reduced to writing. For this purpose it shall suffice for each party to the agreement, acting through its governing body, to accept the agreement by the passage of an ordinance or resolution setting out the terms of the agreement. The agreement, ordinance, or resolution shall be published in the official journal of the parish or municipality, in the same manner as are the other proceedings of the governing body."
The contents of the written agreements are addressed in Section 1331, in pertinent part, as follows:
 "Agreements concluded under R.S. 33:1324 and all written agreements concluded under R.S. 33:1325
shall include a statement of the financial obligations of each of the parties to the agreement."
As can be gleaned from the above, the law grants the District and the municipality the authority to contract with each other for the joint use of funds, facilities, personnel or property for police, fire and/or health protection. The terms of any such agreement must be formally reduced to writing, setting forth the reciprocal rights and obligations of each party.
We are of the opinion that the statutes comprising the Local Services Law must be read in pari materia with the Constitution and laws relating to the District to insure that the agreement does not violate Article VII, Section 14 and/or the statutory provisions limiting the District's use of its surcharge revenues.
Thus, for example, applying the Local Services Law to the issue presented for our reconsideration, since one of the participants to the agreement (i.e., the municipality) is authorized by law (i.e., its general police power) to perform the activity (i.e., the call-taking and dispatching of non-emergency radio transmissions), it would appear that an intergovernmental agreement may be entered into between it and the District. As previously noted in Opinion No. 96-97, the joint effort to monitor non-emergency transmissions of law enforcement personnel constitutes a public purpose.
We focus now on the issue of quid pro quo between the two parties. As previously noted, the proposition passed by the voters limits the use of District's surcharge revenues to establishing, maintaining and operating the 911 emergency telephone system. Consequently, the costs of additional equipment and/or lines to enable the District to offer the services in question must be borne by the municipality. Further, the municipality would be responsible for the payment of the salaries and related benefits of the employees who perform these services.
If the consideration received by the District from the municipality is not commensurate to the costs associated with the services rendered by the former, the transaction will be deemed an unconstitutional donation.
In summary, we reaffirm Attorney General Opinion No. 96-97 which concludes that the District may not use its surcharge revenues to provide non-emergency dispatch services to municipalities located within the District's geographical boundaries. However, the District may enter into a formal intergovernmental agreement with the municipality under which the District's personnel could monitor and dispatch non-emergency radio transmissions. The agreement must conform to the statutory provisions comprising the Local Services Law at R.S. 33:1321, et seq. Caution should be exercised so that the consideration to be received by the District from the municipality adequately reimburses the former for the costs incurred in rendering the services set forth in the agreement. This will insure that the District's surcharge revenues are not depleted for an unauthorized purpose and that Article VII, Section 14 is complied with.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ________________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob III/cla
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General