Dear Mr. LaRocca:
As counsel for Hospital Service District Number 2 of the Parish of St. Mary (the "District"), you requested the opinion of this office regarding several issues pertaining to a proposed expenditure of public funds by the District.
Prior to December 1, 2001, the District was the owner and operator of the Lakewood Medical Center in Morgan City (the "Hospital"). On that date, the operation of the Hospital was assumed by PHC-Morgan City, L.P. ("PHC"), a wholly owned subsidiary of Province Healthcare Company, through a Lease Agreement. Pursuant to R.S. 40:2115.11, et seq. an application was filed seeking review and approval of the transaction by the Attorney General. By letter dated December 4, 2001, the Lease Agreement was approved.
The final terms and conditions of the transaction included among numerous other issues, the length of the term, the purchase price, certain agreements relative to the condition, maintenance, improvements, and surrender of the premises, and retention by the District of the existing Tax Fund and a discontinuation of the practice of assessing a maintenance tax, and the agreement not to renew such tax in the future. PHC agreed to maintain (at its sole expense) the premises during the term of the Lease Agreement. The Lease Agreement further gives PHC the right, under some circumstances, to make improvements to the premises at its sole expense.
You advised that PHC has approached the District with a request that the District pay the costs of $312,000 for the demolition of a building to make way for a private developer to sub-lease a portion of the real property from PHC and to develop and construct a medical office building and parking facility valued at approximately $4 to $5 million. The building will be owned and rented by the developer to physicians and non-physicians and upon termination of the Lease Agreement will revert to ownership by the District. PHC has also proposed that the District construct at the approximate cost of $200,000 a community education room to be owned by the District and be a part of the improvements described in the District-PHC Lease Agreement. Under the Lease Agreement, PHC has no obligation to tear down the existing building or to build these proposed improvements.
 1. Would the expenditure of these funds by the District violate Louisiana Constitution of 1974, Article VII, Section 14 prohibition of the gratuitous donation, loan or pledge of public property?
La. Const. Art. VII, Sec. 14, with certain exceptions, prohibits any political subdivision, including the District, from making loans, pledges or donations of the funds, credit, property or things of value of the state or of any political subdivision. Although La. Const. Art. VII, Sec.14(B) provides certain exceptions to this rule, those exceptions do not apply to the situation presented.
In Op.Atty.Gen. 91-0651, this office summarized the principles of interpretation of this constitutional provision as follows:
 (1) Any expenditure of public funds or alienation or use of any public things of value must be mandated by a legal obligation which obliges such use for a definite and lawful public purpose.
 (2) The predicate legal obligation may be created by any normative source of law, which has coercive and binding effect. These include the constitution, statutes, ordinances which are law rather than enabling acts, home rule charters, corporate articles of incorporation, and contracts which are validly authorized by an independent source of law.
 (3) If the public purpose for the use, alienation or expenditure is legally obligatory upon the public body or officer, or in some cases the recipient, the actions taken — the means for the public purpose sought — must also be lawful.
 (4) A statute, ordinance, home rule charter, articles of incorporation or other source of a legal obligation which dedicates the use of public property to a specific public purpose creates a presumption that such use or transfer serves a public benefit proportionate to the cost.
 (5) Where the legal obligation arises from a discretionary power or duty expressed in a contract, such as in the police power, the public benefit and its proportionality are not presumed but must be shown.
 (6) An ultra vires statute, ordinance, contract, etc. creates no legal obligation under Art. VII, § 14.
 (7) The public purpose for the alienation, use or transfer of public things of value must be mandated by a legal obligation or duty and must be accomplished or facilitated by actions which are a lawful or authorized means to the realization or achievement of that public purpose.
Our position in this regard is consistent with City of Port Allen v.Municipal Risk Agency, Inc., 439 So.2d 399 (La. 1983), which interpreted Art. VII, Sec. 14. Therein the Louisiana Supreme Court ruled this constitutional provision is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. In that case, the Court stated: ". . . even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a `public purpose'".
The courts have held that it is unconstitutional to use public funds or resources for even another public entity where there is no legal obligation to do so according to law. See, for instance, Town of Bruslyv. West Baton Rouge Police Jury, 283 So.2d 288 (1st Cir. 1971), writ denied, 284 So.2d 776 (Sup.Ct. 1973), wherein the Police Jury attempted to reallocate monies from its surplus funds to municipalities within the parish, which was held unconstitutional on the basis that the Police Jury had no legal obligation to provide funding to municipalities;Beard-Pouland, Inc. v. Louisiana Department of Highways, 362 F. Supp. 547
(W.D.La. 1973), wherein it was held that the state could not constitutionally pay relocation expenses when the jurisprudence did not permit such and when a constitutional amendment authorizing this action had not gone into effect; and City of Port Allen, Louisiana, supra.
Under the Lease Agreement, PHC has control of the premises at issue. PHC agreed to maintain, at its sole expense, the premises during the term of the Lease Agreement. This office is unaware of any provision of law that would obligate or authorize utilization of the District's funds to demolish a building which was leased to PHC in order for a third party developer to sub-lease the site and develop and construct a medical office building on that site. Accordingly, we believe that in this particular instance there is no legal obligation for the District to provide funds for the demolition of the building and such a transfer would be in violation of Art. VII, Sec. 14 of the Louisiana Constitution. Our opinion might be different had the agreement between the parties anticipated the use of District funds for this or a similar purpose, so that such a use would constitute part of the consideration for the transaction. In such an instance, it would be necessary to attempt to make a factual, even though speculative, determination as to the relative value of a depreciating office building and the District's contribution.
 2. Would the District's participation in the project with PHC-Morgan City, L.P. constitute a permissible cooperative endeavor within the statutory purposes of a hospital service district?
As we believe that there is no legal obligation for the payment by the District to PHC, this question must be answered in the negative. The Louisiana Supreme Court has ruled that all cooperative endeavors authorized by Section 14(C), must also meet the general standard for the non-gratuitous alienation of public funds or property established by Section 14(A). See, City of Port Allen, supra. Despite the authorization of cooperative endeavors, Section 14(A) is, nevertheless, violated whenever the State seeks to give up something of value in the absence of a legal obligation to do so. In other words, only if the use of public funds or property is authorized by a valid legal obligation, will it be considered a constitutionally sanctioned cooperative endeavor. The requirement of a legal obligation to expend public funds or use public property is the threshold, but not the only predicate for the constitutionality of the expenditure or use. The expenditure or use must also be for a public purpose and create a public benefit proportionate to its cost. Attorney General Opinion Nos. 92-722 and 90-651.
The answers to these two questions pretermit the remainder of your questions pertaining to whether additional approvals would be required from this office or the voters in order to complete the transaction.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General BY: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH