Dear Representative Frith:
You requested an Attorney General's opinion regarding certain audit findings in the Louisiana Legislative Auditor's Compliance Audit ("Audit") on the Lafayette Parish School System issued October 26, 2005. You indicate that the Legislative Auditor concluded that during a four year period public money totaling approximately One Million ($1,000,000) Dollars was paid to contract drivers for frozen miles not driven, for improperly guaranteed miles, and for improperly paid insurance costs. You question whether the Lafayette Parish School Board ("Board") has a legal obligation to attempt to recover from the Board's contract bus drivers, any monies that were improperly paid to those drivers.
As you noted, the Audit Report included findings relating to the payment of drivers for frozen miles not driven, improperly guaranteed miles, and improperly paid insurance costs. Our office has reviewed the Audit Report, and will address the findings related to each of the fore mentioned areas. Before proceeding with our legal analysis, we must first note that this office's role in the issuance of this opinion is to answer questions posed on issues of law. Our role is not to determine the prudence, efficiency, or fairness of decisions made by the public entity or to review the appropriateness of policies from a fiscal perspective, unless such decisions or policies violate law.
First, regarding payments for frozen mileage not driven, the Audit Report indicates that during a four year period, covering the 2001/2002 school year through the 2004/2005 school year, the Board paid $620,764 for miles not driven because of frozen mileage. However, the payments for frozen miles were not improper. The frozen mileage is payable under the bus drivers' contracts, regardless of the number of miles actually driven, pursuant to La. R.S. 17:497(D). Therefore, the Board is obligated to pay drivers for the frozen mileage. The Audit Report does not indicate that the Board cannot or should not pay drivers for frozen miles not driven. The Audit Report merely reveals that situations can occur where the Board pays for miles not driven. The Audit Report points *Page 2 
out that the Board has no policies regarding the level at which routes are to be frozen, and demonstrates the consequences, which are that the Board paid $620,764 for miles not driven over the last four years. For further discussion of frozen miles see Attorney General Opinion No. 05-0054.
The next audit finding addressed payments for improperly guaranteed mileage. The Audit Report indicates that the Board guaranteed the route mileage of contract drivers who did not have frozen mileage for the 2004/2005 school year even though there was no legal requirement to do so. Actual mileage driven by many of these drivers was substantially less than the guarantee. The result was that, for the 2004/2005 school year, the Board paid approximately $353,758 for 222,489 which were not driven when there was no legal obligation to do so. This appears to be an unconstitutional donation of public funds.
It is the opinion of this office that a public agency, including the Board, would be in violation of the Louisiana Constitution if no recoupment efforts are made to recover unauthorized payments. Article VII, Section 14 of the Louisiana Constitution of 1974 provides, in pertinent part, the following:
 "Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . ."
Article VII, Section 14 of the Louisiana Constitution clearly prohibits the donation of public funds. Thus the state or any of its political subdivisions may not loan, pledge or donate its funds or anything of value to or for any person when it is under no obligation to do so. See City of Port Allen v. LouisianaMunicipal Risk Agency, 439 So.2d 399 (La. 1983); Beaird-Poulan,Inc. v. Department of Highways, 362 F.Supp. 547 (W.D.La. 1973). We have interpreted legal obligation to mean that the expenditure of funds be sanctioned, authorized by law, or in the discharge of a legal duty. Attorney General Opinion Nos. 02-0162 and 00-0014.
Payments made for work not performed, when there is no obligation to do so, is prohibited by Article VII, Section 14 of the Louisiana Constitution. It stands to reason, therefore, that the Board must exercise every reasonable means to recover such payments. Reasonable means must be determined on a case-by-case basis and on sound business practices and principles. In accord are Attorney General Opinion Nos. 03-0444 and 05-0082.
The final audit finding you asked us to address is improperly paid insurance costs. The Audit Report indicated that during the 2004/2005 school year, the Board leased buses to 19 contract drivers, due to the fact that their buses had not arrived prior to the start of *Page 3 
the school year. The Board paid $55 per bus per day to lease the buses from local bus companies and passed that cost on to the contract drivers. The Board, not the contract drivers, paid for the insurance on the leased buses. All other contract drivers are responsible for insuring their own buses. The Audit Report states that the practice of subsidizing the insurance costs of these drivers is improper because certain drivers are being granted a benefit denied to other drivers.
First, it should be noted that the System is authorized to purchase insurance on privately owned buses for the owners of such vehicles and on privately owned buses used for transportation of school children for and on behalf of such boards. La. R.S. 17:159.1 and 159.2 provide as follows:[1]
 La. R.S. 17:159.1 Insurance on privately owned school busses; withholding amounts to pay premiums; governmental immunity no defense
 A. All parish and city school boards, contracting for the use of privately owned school busses for the transportation of pupils, are hereby authorized to procure contracts on a fleet or group basis for the owners of such vehicles insuring such vehicles and the owners thereof with respect to all types of vehicular insurance as defined in R.S. 22:6.
 B. The amounts required or to be required during each year to make premium payments during such year, may be withheld from compensation due the owners of such insured vehicles, in equal monthly installments.
 C. All contracts of public liability and property damage insurance obtained as provided herein shall contain a clause whereby the insurance companies issuing said insurance shall not assert as a defense to any suit against them, the governmental immunity of such school board.
 La. R.S. 17:159.2 Insurance premiums as obligation of boards; privately owned buses
 A. All premiums for all insurance policies of public liability and property damage insurance applying to and covering school buses owned by *Page 4 
parish and city school boards shall be the obligation of, and payable by, the board owning such buses.
 B. The above and foregoing provision shall not be construed as preventing parish and city school boards from paying the premiums for public liability and property damage insurance covering and applying to privately owned buses used for transportation of school children for and on behalf of such boards.
School boards that purchase insurance for owners of school buses pursuant to La. R.S. 17:159.1 are also authorized, but not required, to withhold premium payments for such coverage. For those buses used for transportation of school children for and on behalf of such boards that are insured by the school board pursuant to a school board's authority in La. R.S. 17:159.2, we find no statutory provision that would either prohibit a school board from recovering or require a school board to recover such premiums from a contract driver leasing the bus from the school board.
Second, it appears that there are two distinct sets of contract drivers — drivers who own buses and those who lease buses. Each of these groups is treated differently with respect to insurance. However, in the facts presented, there is no prohibition against treating separately situated groups differently and we find no legal requirement that the Board treat all contract bus drivers the same.[2] The Board, acting under its authority to pay insurance premiums, incurred an obligation to pay the insurance premiums of contract drivers leasing buses from it. There does not appear to be a constitutionally prohibited donation with respect to the insurance payments. As such, the Board is not required to seek recovery of such payments.
In conclusion, it is the opinion of this office that the Board has a legal obligation to attempt to recover from the Board's contract bus drivers, any monies that were improperly paid to those drivers. Payments made for improperly guaranteed miles appear to be a constitutionally prohibited donation of public funds. The Board must exercise every reasonable means to recover such payments. The Board has no obligation to seek recovery of payments made for frozen miles not driven or for insurance costs paid. Payments made for frozen miles not driven were not donations of public funds. The frozen mileage is payable under the bus drivers' contracts, regardless of the number of miles actually driven, pursuant to La. R.S. 17:497(D). The insurance costs paid by the Board were not paid in violation of law. *Page 5 
Trusting this adequately responds to your request, we remain
Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: _______________________________ KENNETH L. ROCHE, III Assistant Attorney General
[1] Note that school boards are also given the authority to enter into and consummate contracts for public liability and/or bodily injury insurance, and property damage insurance, covering the operation, use or maintenance of motor vehicles owned and operated by such boards in La. R.S. 32:601.
[2] As we noted earlier in this opinion, the administrative and fiscal advisability of the Board's policy on the payment of insurance is not within the scope of this opinion. We defer to the Louisiana Legislative Auditor to advise entities on such matters.