Dear Ms. Early and Mr. Anzelmo:
You have requested an opinion of the Attorney General relating to litigation involving the Regional Transit Authority (RTA) created pursuant to R.S. 48:1651, et seq. You have submitted two documents with your request. Exhibit "A" is a proposed Final Judgment and Decree, and Exhibit "B" is a draft of a proposed Cooperative Endeavor Agreement (Agreement) between the Authority and the New Orleans Tourism Marketing Corporation (Corporation).
The Authority constitutes a "body politic and corporate and political subdivision of the State of Louisiana", pursuant to R.S.48:1654. The Corporation is a nonprofit economic development corporation created pursuant to R.S. 33:9020, et seq.
As you are aware, this office is not a party to the litigation in question. We have been served with the pleadings in the case pursuant to LSA-C.C.P. Art. 1880. It has been, and continues to be the policy of this office not to release formal opinions on issues currently in litigation. While we have no reason to doubt that the proposed Final Judgment and Decree is in the best interest of all parties involved, we believe it would be inappropriate to express an opinion thereon. We turn now to the Agreement represented by Exhibit "B".
Initially, we note that the Agreement is in preliminary draft form. Accordingly, the analysis and conclusions expressed herein are limited to the preliminary draft submitted for our review. In general, the Agreement obligates the Corporation to do the following things as they relate to the Authority:
 1. Augment or expand existing tourism marketing activities, and/or initiate new tourism marketing activities, in such ways as are likely in the long term to increase the number of tourists, trade show and/or convention attendees, visitors, and/or local utilization of RTA transit services and/or increase RTA sales and use tax revenues, including but not limited to revenues resulting from the collection of the RTA tax as applied to the furnishing of sleeping rooms in hotels in Orleans Parish. See R.S. 47:301(14)(a).
 2. Include reasonable attention to the RTA's Riverfront, St. Charles, and other historic streetcar lines in all tourism and convention promotions, whenever reasonably feasible and/or appropriate.
 3. Consult with the RTA as needed or requested regarding information or promotions of RTA's transportation services to the City's tourist attractions, tourist or transportation related facilities, or related areas of interest, such as the Convention Center, New Orleans East/Jazzland, the Airports, Union Passenger Terminal, the New Orleans Museum of Art, City Park, the Cemeteries, and/or the Florida Parishes, and coordinate its own promotions with those of the RTA, whenever reasonably feasible and/or appropriate under the circumstances.
 4. Cooperate with and actively assist the RTA and other agencies, public and private, in an ongoing effort to secure federal, state and other funding for the development, preservation and maintenance of existing and proposed streetcar and light rail projects, including but not limited to light rail service to New Orleans East/Jazzland, the Airports, Union Passenger Terminal, the New Orleans Museum of Art and City Park, the Cemeteries, and/or the Florida Parishes, whenever reasonably feasible and/or appropriate under the circumstances.
 5. Promote appropriate use of RTA services by tourists, convention — goers and/or convention organizers, whenever reasonably feasible and/or appropriate under the circumstances.
 6. Promote the development of the tourism industry by giving due attention in marketing activities to locally-connected films and music and local culture, with due attention especially to those artistic and cultural expressions that are related to, feature or incorporate significant references to the historic streetcar system, whenever reasonably feasible and/or appropriate under the circumstances.
In return, we have been advised that the Authority will pay an "annual contract fee" to the Corporation from its sales and use tax revenues and/or fare box revenues, calculated on the basis of a formula that is tied to its sales and use tax revenues.
We offer the following analysis of the law pertinent to the validity of the Agreement. Initially, your inquiry must be examined in light of Article VII, Section 14 of the Louisiana Constitution of 1974. It provides, in pertinent part, the following:
 "§ Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . . .
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
A very comprehensive analysis of the above Section, as it relates to the expenditure and/or use of public funds was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds.
Paragraph (C) authorizes the state and its political subdivisions (i.e., the Authority) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations, corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the nongratuitous alienation of public funds established in Paragraph (A). City ofPort Allen v. Louisiana Risk Management, et al, 439 So.2d 399 (La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 The cases that do exist [under La. Const. Art. IV § 12 (1921)] hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so . . ..
 * * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a "public purpose". (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See Beard-Poulan, Inc. v. Dept. of Highways,362 F. Supp. 547 (W.D.La. 1973) and Town of Brusly v. West Baton RougeParish Police Jury, 283 So.2d 288 (La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the Authority's authorized duties. Attorney General Opinion Nos. 90-651 and 95-141.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Third, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 97-471A, 95-141, 93-787, 92-722, 92-127 and 90-651.
As previously noted, the Authority is created pursuant to R.S.48:1654 which designates it as a political subdivision of the State of Louisiana. Section 1652 constitutes the legislative declaration of policy relating to the Authority. It provides:
 § 1652. Declaration of policy
 The area comprising the parishes of Orleans, Jefferson, St. Tammany, St. Bernard, and other parishes, has developed and continues to develop into a metropolitan area with a common interest in the cultural, social and economic well-being of the people therein and the development of the educational, commercial, and industrial resources thereof. There exist in this metropolitan area serious traffic conditions and congestions and serious mass transportation problems which impede and will increasingly impede the development of these common interests toward their fullest potential. Concerted governmental action is needed to alleviate such traffic conditions and congestion, correct deficiencies in mass transportation, coordinate and balance the transportation facilities operating therein, and otherwise provide a sounder basis for the development of traffic patterns and control. The development of a mass transportation system through a joint instrumentality of the local governments within the metropolitan area is a reasonable approach to the aforesaid needs and problems. The cultural, social, and economic well-being of the people in the metropolitan area and the development of the educational, commercial, and industrial resources thereof are matters of public interest and concern throughout the state. Accordingly, it is the public policy of this state, as a matter of public health, safety, convenience, and welfare, to promote the establishment of such a joint instrumentality, encourage participation therein by the local governments involved, facilitate the accomplishment of its purposes, and bring about solutions to the aforesaid needs and problems. (Emphasis added.)
The powers of the Authority are set forth in R.S. 48:1656 which provides, in pertinent part, the following:
 § 1656. General powers
 The authority shall have all powers necessary or convenient to accomplish the aforesaid purposes, including but not limited to the following:
 (1) The powers, privileges, and immunities authorized by law for private corporations and for instrumentalities of government. . . .
 (2) The power to appoint, select, and employ officers, agents, and employees, including engineering, architectural, and construction experts, fiscal agents and attorneys, to contract for the services of individuals or organizations not employed full time by the authority but who are engaged primarily in the rendition of personal services and not the sale of goods or merchandise, including but not limited to the services of attorneys, accountants, engineers, architects, consultants, and advisors, allowing them suitable compensation . . .
 * * *
 (5) The power to develop data, plans, and information and to develop and carry out mass transportation demonstration projects, including the development, testing, and demonstration of new facilities, equipment, techniques, and methods, and the improvement and utilization of transportation services and facilities, and any other means of developing, utilizing or improving mass transportation in urban areas. Also, in other respects, the power to conduct engineering, financial and economic studies, to make plans, designs, and tests related to mass transportation projects. . . .
 (6) The power to cooperate, participate, and coordinate with the federal government, or the state of Louisiana, or any agency or instrumentality thereof, or any municipal or parish governing body within the regional area of any agency, instrumentality thereof, or the regional planning commission or any similar joint agency, in the execution of any studies, plans, or projects designed for the coordination of its mass transportation system with other transportation in the regional area and with any comprehensive planning and development of the regional area.
 * * *
 (8) The power to make and execute all contracts and other instruments necessary or convenient to the exercise of the powers of the authority, including the power to contract for managerial and operating services.
 * * *
 (11) The power to apply for and accept grants or other assistance from the federal government or from any source whatever, to act as agent for the federal government, and to enter into contracts, loans, leases, or other transactions with the federal government.
Section 1664 provides, in pertinent part, with the regard to the Authority's taxing power:
 § 1664. Taxing power defined
 The authority shall have power to impose any tax on any subject of taxation within the regional area for any transit related purpose whatsoever, except as otherwise prohibited in this Chapter or by the Constitution or laws of this state, provided, however, that no tax shall be imposed within the regional area by the authority unless it has first been approved by a majority of voters in such election in each of the parishes having membership in the authority .(Emphasis added.)
The Corporation's authority is derived from the "Cooperative Economic Development Law", found at R.S. 33:9020, et seq. Section 9021 provides, in pertinent part, the following:
 § 9021. Findings, declarations of necessity, and purpose
 It is hereby found and declared that:
 (1) There exists in some of the regions, parishes, and municipalities of the state an condition of substantial and persistent unemployment, underemployment, and other forms of economic distress.
 * * *
 (3) The maintenance of the economy of the several local governmental subdivisions of the state at a high level is necessary to overcome these problems and is vital to the best interest of the state.
 (4) The maintenance of the economy of the several local governmental subdivisions of the state at high level is a matter of public policy and the cooperative economic development activities and powers prescribed and conferred by this Chapter are for a public purpose for which public money may be expended.
 * * *
 (6) State authorization to local governmental subdivisions, public corporations, and public benefit corporations to engage in cooperative endeavors with each other, the United States or its agencies, or with any public or private associations, corporations, or individuals for the purpose of economic development would help said local governmental subdivisions to alleviate the conditions of unemployment, underemployment, and other forms of economic distress presently existing in their areas, and as such is in the public interest.
 * * *
 (8) Public-private partnerships which take advantage of the special expertise and experience of representatives of the private sector can be among the most effective programs to encourage and maintain economic development.
 (9) The economic development needs of the state of Louisiana require the existence of entities which can function as public-private partnerships, taking advantage of the congruence between the public interest and the interest of business and industry. (Emphasis added.)
Section 9022 defines "Cooperative endeavors" as:
 . . . any form of economic development assistance between and among the state, its local governmental subdivisions, political corporations, public benefit corporations, the United States or its agencies, or any public or private association, corporation, or individual. The term "cooperative endeavors" shall include but not be limited to cooperative financing, cooperative development, or any other form of cooperative economic development activity.
The Corporation's powers are set forth in R.S. 33:9023 which provides, in pertinent part:
 (C) The corporation is hereby authorized and shall have all the authority and power necessary in order to carry out and effectuate the purposes and provisions of this Chapter, including without limiting the generality of the foregoing, the following specific powers which shall be in addition to others herein granted:
 * * *
 (6) To make, enter into and execute all contracts and agreements, with any person or agency, public or private, necessary or incidental to the performance of its duties and the execution of its powers under this Chapter.
 (7) To borrow money and to apply for and to receive and accept from any federal agency, the state, and/or the political subdivisions of the state or from any source, public or private, grants, loans, or advances for or in the aid of an economic development cooperative endeavor, project or projects, and to give such security as may be required and to enter into and carry out contract of agreements in connection therewith.
 * * *
 (11) To enter into partnerships, joint ventures, and other relationships with any federal, state, or local governmental agency or with any private or public firm, partnership, corporation or other entity.
 * * *
 (14) To exercise all or any part or combination of powers herein granted and to do and perform all acts and things necessary or convenient to carry out the powers expressly granted by this Chapter.
As can be seen from the above, the Authority and the Corporation are vested with broad and sweeping powers. The Authority possesses all powers necessary to develop and promote a mass transportation system through the joint instrumentality of the local governments within its jurisdiction, and in cooperation with entities such as the Corporation. Likewise, the Corporation is empowered to engage in cooperative endeavors with local governmental subdivisions, such as the Authority, for the purpose of economic development.
Accordingly, we find the presence of a legal obligation or duty (i.e., valid statutes) for the Authority and the Corporation to engage in a cooperative endeavor to promote the development and utilization of the Authority's transportation systems. We turn now to the second criterion — that the cooperative endeavor serve a public purpose.
The promotion of the development and utilization of a mass transportation system and the maintenance of the economy of this State, its parishes and municipalities clearly serves a public purpose. The declarations of policy and necessity contained in the statutes creating the Authority and Corporation unequivocally declare their purposes to be "vital to the best interests of the state", as well as "a public purpose for which public money may be expended." R.S. 48:1652 and 33:9021(3) and (4). We turn now to the third criterion — that the benefits resulting from the Agreement and realized by the RTA are commensurate or proportionate to the cost incurred under the Agreement.
The benefits inuring to the RTA have been enumerated and discussed supra. In general, they will promote and advance the development of the regional transit system, increase utilization of transit services, result in greater coordination of RTA services with leading industries in the City of New Orleans, increase the RTA's sales and use tax and fare box and other revenues, coordinate and maximize cooperative efforts to secure federal funding for transit and to otherwise serve transit-related purposes. We have been advised that the RTA's Board of Commissioners (Board) deems these benefits to be clearly commensurate to the expense thereof.
While the benefits are somewhat intangible, they are, nevertheless substantive, and constitute important contributions which government can make to the quality of life of its citizens and visitors. We therefore conclude that the financial obligations assumed by the RTA pursuant to the Agreement are not so disproportionate to the public benefit to be realized so as to render the Agreement unconstitutional. Accordingly, we find that the Agreement meets the third criterion of proportionality and commensurability.
As stated in your request, the moneys to be utilized by the Authority are generated, in part, from sales and use tax revenues and/or fare box revenues. The RTA's 1985 sales tax proposition approved by the voters provides that the tax revenues generated thereby are "dedicated to transit and transit related purposes". Further, as previously noted, R.S. 48:1664 empowers the RTA to impose any tax on any subject of taxation within the regional area "for any transit related purpose whatsoever". We have been advised that the RTA's Board regards the expenditures enumerated in the Agreement to constitute expenditures for "transit and transit related purposes".
We believe the Board is entitled to the exercise of its own reasonable discretion relative to the determination of what constitutes a "transit or transit related purpose". We are also mindful of R.S. 39:704 which provides:
 § 704. Proceeds of special tax
 The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
It has been consistently held by this office and the jurisprudence of this state that the scope of the authority for the expenditure of sales tax revenues is concomitant to the consent of the electorate. Accordingly, care should be taken to insure that the expenditure of sales and use tax revenues complies with the dedication contained in the 1985 tax proposition and applicable law. In other words, proceeds of the RTA tax must be used exclusively for the objects and purposes for which the tax was levied (i.e., for transit and transit related purposes), and records of the taxing authority should clearly reflect these objects and purposes.
In summary, we find the proposed Agreement to be (1) legislatively authorized (2) for a legitimate public purpose and (3) in satisfaction of the test of proportionality and/or commensurability. We further conclude that the Board of Commissioners for the RTA is vested with the inherent authority to exercise its own reasonable discretion relative to the determination of what constitutes a "transit or transit related purpose", in the expenditure of its sales tax revenues. These determinations must conform to the dedication contained in the 1985 tax proposition, as well as applicable law.
Trusting this will be of some assistance to you in the preparation of your cooperative endeavor agreement, I am
Very truly yours,
 RICHARD P. IEUYOUB Attorney General
 By: ________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj