Dear Mayor Hightower:
You requested the opinion of this office concerning whether the Shreveport-Bossier Convention and Tourist Bureau (the "Commission") may use funds to pay the City of Shreveport (the "City") or a contractor chosen by the City to operate the new Convention Center. You advised that the funds would be used strictly to promote and attract events to Shreveport and to the Convention Center. Your question is how the funds can legally be transferred between the two governmental entities.
Pursuant to Article VI, Sections 19 and 30 of the Constitution of Louisiana, the Commission was created as a special district or commission composed of all the territory in Bossier and Caddo Parishes. It is a body politic and corporate and a political subdivision of the state of Louisiana. It has as its purpose the promotion of tourism within the jurisdiction of the Commission. La.R.S. 33:4574.
The Commission may levy a tax upon the occupancy of hotel rooms and unless provided otherwise in any local, special, or general law, the proceeds of the occupancy tax so levied, less a reasonable sum to be paid as a collection fee, shall be used by the Commission for the operation of the Commission and for the purpose of attracting conventions and tourists into the area and jurisdiction of the Commission, including but not limited to the authority to spend money for advertising, promotion, and publication of information, or for any other purpose generally or specifically authorized for occupancy taxes in the two parishes or by any local, special, or general law. The governing authority of the Commission may also enter into a cooperative endeavor agreement contract with the governing authority or authorities of the parish or parishes within its territories or with other public entities for the performance of such duties and functions of the Commission which the Commission determines is necessary but is unable to perform itself. La.R.S.33:4574.1-A.
The Commission is required to dedicate and use the proceeds derived from three-quarters of one percent of the occupancy tax for capital improvements, repairs, and maintenance of Independence Stadium. Furthermore, the Commission must dedicate and use the proceeds derived from three-quarters of one percent of the occupancy tax for the same purposes for which monies from the fund created by La.R.S. 47:302.3 are used. La.R.S. 47:302.3 provides for the avails of a portion of the State sales tax imposed in the city of Bossier City to be used exclusively for the operation and maintenance of the Bossier City civic center. The Commission may expend revenues for these purposes by means of entering a cooperative endeavor with the governing authority of Shreveport or Bossier City, as appropriate. La.R.S. 33:4574.1-A.
In addition to the occupancy tax, the Commission receives a portion of the State's sales tax imposed in the cities of Shreveport and Bossier City which are available exclusively for use by the Commission for the purpose of promoting and enhancing tourism activities, and for supporting all other activities consistent with the authorized mission of such Commission. La.R.S. 47:322.30.
Accordingly, the Commission must use a portion of its occupancy tax proceeds for capital improvements, repairs, and maintenance of Independence Stadium and for the operation and maintenance of the Bossier City Civic Center. We are unaware of any other limitation on the use of the Commission's funds, except that any expenditure must be for the purpose of enhancing and promoting tourism activities and for supporting activities consistent with the mission of the Commission. If, as you advise, the proposed expenditures are to promote and attract events to Shreveport and to the Convention Center, such expenditures appear to be of an authorized nature.
The Commission's expenditure of public funds must be examined in light of Article VII, Section 14 of the Louisiana Constitution of 1974. It provides, in pertinent part, the following:
 "§ Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . .
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
A very comprehensive analysis of the above Section, as it relates to the expenditure and/or use of public funds, was undertaken by this office in Op.Atty.Gen. No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the Commission), to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A).City of Port Allen v. Louisiana Risk Management, et al., 439 So.2d 399
(La. 1983) and Op.Atty.Gen. No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV
§ 12 (1921)] hold primarily that this section is violated whenever the state or political subdivision seeks to give up something of value when it is under no legal obligation to do so. . .
 * * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See Beard-Poulan,Inc. v. Dept. of Highways, 362 F. Supp. 547 (W.D.La. 1973); Town ofBrusly v. West Baton Rouge Parish Police Jury, 283 So.2d 288 (La.App. 1st Cir. 1973). This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the Commission's authorized duties. Op.Atty.Gen. No. 90-651. As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Third, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Op.Atty.Gen. Nos. 95-141, 93-787, 92-722, 92-127 and 90-651.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. Op.Atty.Gen. Nos. 95-141, 94-515, 93-787, 93-766, 93-665, 93-558, 92-494, 91-104, 90-652, 89-180 and 84-871.
The initial issue to be determined regarding the proposed payments in question, is whether a valid legal duty or obligation exists for the Commission to undertake such expenditures. You advised that the funds would be used strictly to promote and attract events to Shreveport and to the Convention Center. As previously noted, La.R.S. 33:4574 empowers the Commission to promote tourism within the jurisdiction of the Commission. Clearly, this statutory framework constitutes valid legislation and, consequently, the presence of a legal obligation or duty on the part of the Commission. Further, we find this obligation and/or duty to be substantially consistent and within the scope of the Commission's authorized duties. We turn now to the second prerequisite that the transaction be for a public purpose. There can be no question that the promotion of tourism clearly serves a public purpose. See Op.Atty.Gen. Nos. 00-302, 98-312, and 96-86.
The third requirement, that the public benefit received is proportionate to the cost to be borne, is a factual determination that this office is not in a position to address.
Accordingly, it is the opinion of this office that it would be permissible for the Commission to use its funds to operate the new Convention Center, if such use constitutes the promotion and attraction of events to Shreveport and the Convention Center. There is no requirement, however, that the Commission use its funds to pay the costs of operating the Convention Center. If the Commission did choose to use its funds for such purpose, we would suggest that the parties enter into a cooperative endeavor agreement as authorized by Art. VII, Section 14 of the Louisiana Constitution.
Trusting this adequately responds to your request, we remain
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH/dam
RPI/MSH